WILLIAMSON & ADAMS, INC., Respondent, *v.* MCMAHON-MCENTE-
GART, INC., and THE ÆTNA CASUALTY AND SURETY COMPANY,
Appellants, Impleaded with THE CHURCH OF THE GOOD SHEP-
HERD OF THE ARCHDIOCESE OF NEW YORK, Respondent, and
THE MISSIONARY SOCIETY OF ST. PAUL THE APOSTLE OF THE
STATE OF NEW YORK and Others, Defendants.

First Department, March 3, 1939.

*Thomas P. Morrissey* of counsel [*Spencer & Iserman*, attorneys], for the appellants.

*David B. Williams*, for the plaintiff-respondent.

*John B. McGuire* of counsel [*McGuire & McGuire*, attorneys], for the defendant-respondent.

CALLAHAN, J. This action is brought by the plaintiff, a subcontractor, to foreclose a mechanic's lien in the sum of $1,338.84.

The defendant-appellant, McMahon-McEntegart, Inc., as general contractor, entered into a contract to erect a church for the Church of the Good Shepherd of the Archdiocese of New York, as owner.

The defendant-appellant, the Ætna Casualty and Surety Company of New York, furnished a completion bond which provided for the payment by the general contractor of all bills for labor and material entering into the construction of the church.

The general contractor sublet the metal furring, lathing and plastering to Empire Plastering Company, a partnership consisting of John Wilson and James Maiorany, and the Empire, in turn, sublet the furring and lathing to plaintiff.

The building has been completed and both plaintiff and Empire have performed all the work required under their contracts. There is $1,400 in the hands of the owner applicable to the contract, and $623.27 in the hands of the general contractor.

The contract was entered into in 1935, and the work was not completed until 1937. In the course of the work, and in about the month of October, 1936, Mr. Wilson, of Empire, advised plaintiff that he needed money with which to meet certain plastering payrolls. Plaintiff's officer thereupon had a talk with the general contractor, who advised plaintiff that if plaintiff advanced the payrolls requested by Empire and obtained an order, the general contractor would accept the order. Plaintiff thereupon advanced to Empire the amount of various payrolls. All of the moneys so advanced were paid to Empire's laborers. The latter fact is not denied by the general contractor. The general contractor received requisitions from Empire containing these payments and in its own requisitions on the owner included, as a payment by it, the identical payrolls.

On November 6, 1936, plaintiff obtained an order from Empire directing the general contractor to pay to plaintiff $5,538.17 out

of the first moneys due or to become due to Empire. The amount of the order was made up of $3,071.27 due plaintiff for labor and materials under its contract, and $2,466.90 advanced for payrolls by plaintiff to Empire up to the date of the order. Said order was duly filed and served on the general contractor. Later, a second order was obtained under like circumstances, which was also duly filed. This order was for the sum of $575.50, representing further payroll advances.

The total amount of plaintiff's contract was $5,596.44. The total amount of its advances to Empire for payrolls was $3,042.40. As against the aggregate of these two sums ($8,638.84), plaintiff received three payments totaling $7,300. The first was a payment in the form of a check of the general contractor to Empire for $2,500, which was indorsed to plaintiff and applied on account of the contract between plaintiff and Empire. The general contractor thereafter drew two checks directly to the order of the plaintiff. On November 17, 1936, it gave the first check which was for $4,000. The check bore a notation " a/c Empire Plastering Co., a/c Good Shepherd Church." As it was for a larger sum than the balance then due on plaintiff's contract price, at least part of the money was paid in recognition of plaintiff's order. At the time plaintiff received said check, it was instructed by one of Empire's partners to apply $2,466.90 thereof in payment of payroll advances, and the balance on the lathing contract, which plaintiff did. Later the general contractor paid to plaintiff a check for $800, bearing a similar notation to that on the $4,000 check. Plaintiff applied $575.50 of the $800 check in repayment of payroll advances, and the balance of $224.50 on account of its contract. This application was likewise made at the direction of a member of the Empire partnership. If the moneys so received were properly applied, a balance of $1,338.84 remained due plaintiff for labor performed and materials furnished, for which amount plaintiff filed its lien on January 29, 1937.

The general contractor claims that the moneys received were required to be first applied to plaintiff's contract price, and that if they had been so applied, no lien would exist.

It appears that after November 17, 1936, the general contractor, through an arrangement with Maiorany, one of the partners of Empire, took over the payments of all moneys due from Empire to the latter's laborers and materialmen. After that date, although Empire performed its contract work, the general contractor took upon itself the payment of all of Empire's bills, receiving Maiorany's express permission to charge each item to Empire's account.

Other than plaintiff's, no liens or assignments have been filed against the improvement. The time for filing liens has expired.

Prior to the time that plaintiff filed its orders with the general contractor, the general contractor had endeavored to have plaintiff accept orders from Empire which contained no provision that plaintiff was to be repaid out of the first moneys due Empire. Plaintiff refused to accept these orders and obtained orders granting it the priority in payment indicated.

After the filing of plaintiff's orders with the general contractor, the latter submitted requisitions to the owner and received moneys which were more than sufficient to pay all of plaintiff's orders, but it refused to pay the balance now claimed by plaintiff, paying instead the claim of other subcontractors, laborers and material-men of Empire for work done long after the filing of the plaintiff's orders. It also repaid to itself, out of moneys so received from the owner, advances it had made to Empire after the plaintiff's advances were made and after plaintiff's orders and its lien were filed.

There are outstanding bills in favor of other unpaid creditors of Empire in the sum of $1,011.85. None of these creditors of Empire, however, have filed liens, nor have they been made parties to this action, nor does it appear that their claims antedated that of the plaintiff. There is no proof that any of these bills represent claims for daily or weekly wages.

The contention of the general contractor is that, by reason of section 36-b of the Lien Law, plaintiff held the funds received by it, which were known to be derived from the improvement, in trust for the payment of claims arising out of the improvement, and that the statute required the plaintiff to apply all moneys so received to the contract price in preference to the repayment of payroll advances.

Section 36-b, in so far as applicable, provides: " The funds received by a subcontractor from an owner or contractor or subcontractor for the improvement of real property are hereby declared to constitute trust funds in the hands of such subcontractor to be applied first to the payment of the claims of the subcontractors, laborers and materialmen, arising out of the improvement."

It is the plain intent of the section that if a subcontractor receives moneys from an improvement and there are any claims of his subcontractors, laborers or materialmen which have not been paid, the recipient of the moneys is required to hold such money in trust for the payment of such claims.

In so far as the evidence in this case discloses, no such claim against plaintiff has ever existed. The plaintiff completed its work and the time for filing of liens has expired. During the course of the work it advanced moneys to Empire, its employer, all of which moneys were used to pay laborers who had performed work

for Empire. We deem it fair to assume that plaintiff has paid all of its own subcontractors, laborers and materialmen. Under the circumstances we fail to see why plaintiff did not have the right, if, indeed, it did not have the duty, to first repay itself for payrolls advanced, when Empire directed that the moneys received be applied in that manner. The situation would be entirely different if there appeared to be any such claims against plaintiff as are enumerated in the statute, or if it appeared that there were any liens filed by any other subcontractor, laborer or materialman, arising out of the improvement, which would be prejudiced by the application made by plaintiff of moneys received by it.

The mere assertion of alleged claims by other persons against Empire, which have not matured into liens and have not been liquidated in this action, and which, so far as the record shows, concern obligations, which, if they exist, were incurred after the filing of the plaintiff's order and its mechanic's lien, would give no right to the general contractor to ignore Empire's orders or the plaintiff's lien.

The direction of the statute, that the funds in the hands of the general contractor should be trust funds for the payment of its subcontractors, laborers and materialmen, would not afford the general contractor the right to select which creditors of Empire were to be paid. Plaintiff was not required to make creditors who filed no notice of their claims parties to this action. (Lien Law, § 44.) While we have testimony that some such creditors of Empire exist, their claims have not been presented or liquidated. While priority under the present law has been removed as between lienors and parity substituted (Lien Law, § 13), there is no requirement in the statute that creditors whose claims are not recorded be joined as parties or share in any fund, and the existence of such claims would be no defense to an action to enforce a lien by the only lienor who has filed its claim.

In *Brockhurst Co., Inc.*, v. *City of Yonkers* (270 N. Y. 459) the court said: " Some degree of diligence is still exacted from a party claiming the benefits of the Lien Law. He cannot rely wholly upon the solicitude of the courts to protect laborers and materialmen."

The general contractor might have impleaded these alleged creditors of Empire, if it saw fit to do so. This it has not done.

The general contractor further contends that there was no fund to which plaintiff's lien might attach by reason of a provision in the contract between general contractor and Empire, to the effect that, prior to any payment being made, the general contractor might request the subcontractor to furnish satisfactory evidence that all its bills had been paid by the subcontractor.

The general contractor plainly waived this provision by continuously paying itself and others out of moneys due Empire. It accepted Empire's work, and received and disbursed moneys received from the owner therefor. All this occurred after the receipt of plaintiff's order and the filing of plaintiff's lien. The general contractor may not now assert the non-existence of an available fund under the circumstances.

The judgment herein, in addition to directing the foreclosure of plaintiff's lien, directed the owner to pay the $1,400 in its hands to plaintiff, and that the general contractor pay the balance of plaintiff's judgment. It awarded the owner judgment against the general contractor and the surety for any unpaid balance of plaintiff's judgment. We believe that it was in all respects correct.

The judgment should be affirmed, with costs of this appeal to plaintiff-respondent and with taxable disbursements to respondent owner.

MARTIN, P. J., O'MALLEY, GLENNON and DORE, JJ., concur.

Judgment unanimously affirmed, with costs to the plaintiff-respondent and with taxable disbursements of the appeal to the defendant-respondent.