**UNITED STATES of America,**
**Plaintiff,**

v.

**MARK ALPHA BRICKWORK CO., Inc., L. S. Homes Corp., Marberg Development Co., Inc., Marta Realty Corp., Marvin & Samuel Rothenberg d/b/a Redhill Construction Co., Belbee Building Corp., Defendants.**

**Civ. No. 18628.**

United States District Court
E. D. New York.
March 15, 1962.

674

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., for plaintiff, Philip Silverman, Asst. U. S. Atty., New York City, of counsel.

Alex J. Soled, White Plains, N. Y., for defendants Marvin and Samuel Rothenberg d/b/a Redhill Const. Co.

Harry B. Lader, Jamaica, N. Y., for defendant Belbee Building Corp.

BARTELS, District Judge.

This is an action by the United States of America ("the Government") against the defendants Marvin and Samuel Rothenberg d/b/a Redhill Construction Co. ("Redhill") and Belbee Construction Corp. ("Belbee"), to foreclose a lien in the sum of $9,850.18 for withholding taxes alleged to be due and owing from the defendant-taxpayer Mark Alpha Brickwork Co. Inc. ("the taxpayer"), a subcontractor.

Redhill was engaged in the construction of certain buildings for the Baldwin Jewish Center of Baldwin, New York and for the Port of New York Authority, pursuant to certain contracts. Belbee was engaged, as the owner of certain property, in constructing 28 houses in the Borough of Queens, City and State of New York. For the purpose of performing masonry work upon these respective projects, Redhill and Belbee, separately and independently, hired the predecessor of the taxpayer as a subcontractor. Thereafter the taxpayer, as such subcontractor, placed certain orders with suppliers to enable it to fulfill its contractual obligations, and sometime prior to October 1, 1955 became obligated to various materialmen and suppliers on the Redhill project in the amount of $1,707.38 and on the Belbee project in the amount of $4,680.97.

There was a provision in the contracts between Redhill and the Baldwin Jewish Center and the Port of New York Authority authorizing the withholding of payment of funds to Redhill until all payments were made to materialmen and suppliers, which by agreements dated June 17 and July 11, 1955, between the taxpayer and Redhill became binding on the taxpayer. There was also a provision in the contract dated April 18, 1955, between Belbee and the taxpayer to the effect that Belbee had a right to retain from the sums due the taxpayer such amounts as might be necessary to indemnify Belbee against any liens or claims chargeable to the taxpayer. Furthermore, on September 2, 1955 Belbee executed two promissory notes for ma-

terials (one for $2,000 payable October 25, 1955 and the other for $2,680.97 payable November 30, 1955) to one of the taxpayer's suppliers, to insure the completion of Belbee's contract.

Thereafter, on October 1, 1955, the Government filed a notice of tax lien and levy with Redhill and with Belbee for withholding taxes owed by the taxpayer to the Government in the amount of $9,850.18. On that date, under their respective construction contracts, Redhill owed the taxpayer sums in excess of $1,707.38 and Belbee owed the taxpayer sums in excess of $4,680.97. After service of the notice of lien and levy, however, both Redhill and Belbee made payments of $1,707.38 and $4,680.97, respectively, to materialmen and suppliers of the taxpayer. It is these sums that the Government now claims were the property of the taxpayer and therefore due from Redhill and Belbee to the Government by reason of the notice of lien on account of the withholding taxes owed by the taxpayer.

The Government claims that it is entitled to recovery under 26 U.S.C.A. §§ 6321 and 6322, providing for the imposition of liens upon property and rights of the taxpayer. Redhill and Belbee do not dispute the effectiveness of any liens properly imposed upon the property of the taxpayer pursuant to these sections, but assert that the sums paid out to the materialmen and suppliers in this case were not property of the taxpayer to which any lien could attach. They rely (i) upon principles of contract and (ii) upon Section 36–a of the Lien Law of the State of New York, as it existed in 1955, under both of which they claim no debt was owing to the taxpayer.

■ The real issue in this case is whether there existed in the hands of Redhill and Belbee any assets or property of the taxpayer at the time the Government served its notice of lien upon them. Conceivably, under the terms of the respective contracts between the taxpayer and the contractors (including the execution of promissory notes by one contractor), the taxpayer was not enti-

tled to the funds in question at the time the Government served its notice of tax lien upon the contractors because they had a right to retain the monies and apply the same to the claims of the materialmen and suppliers. While contracts between individuals may not prevail to immunize the property or rights of a taxpayer from the provisions of the Internal Revenue laws, United States v. Manufacturers Trust Co., 2 Cir. 1952, 198 F.2d 366, such contracts insofar as they create prior rights in third parties under state law, must nevertheless be honored as against the Government, United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74 N.E.2d 226, since a taxpayer in such event has no property rights to which a Federal lien might attach. Fidelity & Deposit Company of Maryland v. New York City Housing Authority, 2 Cir. 1957, 241 F.2d 142.

■ However, the rights of the respective parties under the contracts in question raised certain troublesome issues of incorporation by reference and extent of coverage which the Court does not believe it necessary to explore inasmuch as it is satisfied that the provisions of Sections 36–a and 36–b of the New York Lien Law are sufficient to dispose of the issues. The pertinent portion of Section 36–a reads as follows:

"The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, * * * laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor * * * who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny * * *.

"Such trust may be enforced by civil action maintained as provided in article three-a of this chapter by any person entitled to share in the fund, whether or not he shall have filed, or had the right to file, a notice of lien or shall have recovered a judgment for a claim arising out of the improvement. *For the purposes of a civil action only, the trust funds shall include the right of action upon an obligation for moneys due or to become due to a contractor.*" (Italics supplied)

Defendants claim that under the above section funds in their hands at the time the notice of lien was served were held in trust for the materialmen and that they held no property to which the tax lien could attach. It is the Government's contention that the above section did not authorize payments to materialmen of the taxpayer because at the time the Government filed its notice of lien the liens of the materialmen were inchoate and not perfected and consequently were ineffective against the Government's claim, citing United States v. Kings County Iron Works, Inc., 2 Cir., 1955, 224 F.2d 232, and Gramatan-Sullivan, Inc. v. Koslow, 2 Cir., 1957, 240 F.2d 523.

In Kings County Iron Works the court held that Section 36–a of the New York Lien Law did not prevent the Government from obtaining a lien upon funds held by a contractor superior to the claims of a subcontractor who had not perfected his mechanic's lien by a timely civil action before the Government had filed its notice of lien. In so doing, the court indicated that the rights of the materialmen were similar to those of the holder of an attachment or garnishment lien before the same had matured to judgment and reasoned that whether the property held by the contractor or subcontractor is the property of the taxpayer and whether a prior lien is sufficiently perfected "are, in the final analysis, matters of federal law, although state law will be considered where relevant." (224 F.2d p. 235) Subsequently this rationale was disregarded by the same court when considering analogous questions created by contract rather than by statute. Fidelity and Deposit Company of Maryland v. New York City Housing Authority, supra. Thereafter in a similar situation the Supreme Court had occasion to construe the rights granted under the New Jersey law to a beneficiary of a life insurance policy and held that it was the state law which should determine whether the taxpayer had a sufficient interest in the cash surrender value of the policy to justify the attachment of a Federal tax lien, thus rejecting the rationale of Kings County Iron Works. United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135.

Today there seems to be little doubt that state law, and not federal law, must control in determining whether or not any property right existed in the taxpayer to which any Federal lien might attach. In Aquilino v. United States, 1960, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365, a writ of certiorari was issued by the Supreme Court to the New York Court of Appeals to review its decision, 1957, 3 N.Y.2d 511, 169 N.Y.S.2d 9, 146 N.E.2d 774, holding that under Sections 3670 and 3671 of the Internal Revenue Code of 1939, 26 U.S.C.A., the Government had obtained a valid lien for taxes due from the general contractor upon funds held by him superior to the rights of the subcontractors. The New York decision, in effect, was a pronouncement that Sections 3670 and 3671 were paramount to Section 36–a of the New York Lien Law. The Supreme Court was dissatisfied with this resolution of the question and held that the provisions of the Internal Revenue Code created no property rights but merely attached consequences to the rights created under the state law, stating (363 U.S. pp. 512–513, 80 S.Ct. p. 1280):

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question,

*both federal and state courts must look to state law,* for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute.' Morgan v. Commissioner, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585." (Italics supplied)

To the same effect see United States v. Durham Lumber Co., 1960, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371.

Aquilino was then remanded to the New York Court of Appeals to "ascertain the property interests of the taxpayer under state law". Upon remand the New York Court of Appeals [1] disavowed the view of the lien law espoused by Gramatan-Sullivan, Inc. v. Koslow, supra, as well as its prior decision, remarking:

> "Our conclusion, then, is that, as a matter of New York law, a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid. This being so, it follows that the tax lien herein asserted by the Government against the property of the contractor-taxpayer is ineffective to reach such moneys and that the plaintiff subcontractors are entitled to the court-deposited fund." (Id., p. 282, 219 N.Y.S.2d p. 262, 176 N.E.2d p. 832.)

Obviously, Kings County Iron Works and Gramatan-Sullivan, Inc. v. Koslow can no longer be followed. But it should be observed that in Aquilino a trust was imposed upon funds due from the property owner to a prime contractor-taxpayer, whereas in the case at bar a trust is sought to be imposed upon funds due from a prime contractor and a subcontractor to a subcontractor-taxpayer. These differences however, do not change

the result since Section 36–b of the New York Lien Law (effective in 1955) impresses a trust upon funds received by a subcontractor from an owner or contractor or subcontractor for the payment of claims of his subcontractors, laborers and materialmen arising out of the improvement of real property. See Williamson & Adams, Inc. v. McMahon-McEntegart, Inc., 1st Dept., 1939, 256 App.Div. 313, 10 N.Y.S.2d 37.

Consequently, this Court concludes that under New York law no property right existed in the taxpayer under Sections 36–a and 36–b of the Lien Law to which any Federal tax lien could attach since the interests of the materialmen and suppliers were not inchoate but, on the contrary, were perfected interests of beneficiaries of a true trust.

The above embodies the Court's findings of fact and conclusions of law and judgment is ordered for the defendants.