# UNITED STATES *v.* DURHAM LUMBER CO. ET AL.

No. 23.   Argued October 19, 1959.—Decided June 20, 1960.

*Howard A. Heffron* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Rice, Daniel M. Friedman, A. F. Prescott* and *Myron C. Baum.*

*Arthur Vann* argued the cause for respondents. With him on the brief were *C. V. Jones, Daniel M. Williams, Jr.* and *J. L. Zimmerman.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case involves the competing claims of the Federal Government and certain subcontractors to a sum of money owed to the taxpayers under a general construction contract.

The taxpayers, Michael & Embree, were general contractors doing business at Durham, North Carolina. Early in 1954, they agreed to construct certain buildings for persons herein referred to as the "owners." This work was completed on July 15, 1954, but because the owners disputed the amount due under the contract, payment to the taxpayers was delayed.

In completing the construction work, the taxpayers had utilized the services and materials of numerous subcontractors, most of whom had not been compensated. The respondents are two such subcontractors, who in January and February 1955, gave the owners notice of their respective claims against the taxpayers.

On January 18, 1955, the taxpayers were adjudicated bankrupts. At that time, there was an unpaid balance of $5,250 due from the owners under the construction contract. After extensive negotiations between the owners, the trustee in bankruptcy, and the subcontractors, it was agreed that the owners would absolve themselves from further liability by paying the $5,250 to the trustee, and that the subcontractors could thereafter assert the same rights against the trustee as they could have asserted against the owners. This arrangement was approved by both the Superior Court for Durham County, North Carolina, and the federal bankruptcy court.

Another claimant of the money deposited with the trustee was the Federal Government, which on August 13, 1954, and November 22, 1954, had assessed the taxpayers for uncollected withholding and unemployment insurance

taxes. By virtue of Sections 6321 [1] and 6322 [2] of the Internal Revenue Code of 1954, a federal tax lien attached to all "property and rights to property" belonging to the taxpayers at the time the assessments were made. The Government contended that the money owing under the construction contract was property of the taxpayers to which the tax lien attached.

The referee in bankruptcy, attempting to resolve the competing claims against the fund as if the parties were before a state court, decided that the rights of the Federal Government under its tax lien were superior to those of the respondents. The District Court for the Middle District of North Carolina disagreed, and held that the respondents were entitled to payment of their claims before the Government could satisfy its tax lien. On appeal, the Court of Appeals for the Fourth Circuit affirmed, 257 F. 2d 570. We granted certiorari. 359 U. S. 905.

In affirming the judgment of the District Court, the Court of Appeals stated that the nature and extent of the general contractors' property rights, to which the tax lien attached, must be ascertained under state law. The court then undertook an extensive analysis of the relevant North Carolina statutes [3] and cases. It found that the North Carolina law provides as follows: Subcontractors

---

[1] Section 6321. Lien for taxes:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

[2] Section 6322. Period of lien:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

[3] N. C. Gen. Stat., 1950, §§ 44–6 to 44–12.

who have not been paid by the general contractor have a direct, independent cause of action against the owner to the extent of any amount due under the general construction contract, and any money owed by the owner under the construction contract must first be used to satisfy subcontractors' claims of which the owner has notice. Moreover, to insure that the owner will receive notice of outstanding subcontractors' claims, the North Carolina statute, N. C. Gen. Stat., 1950, § 44–8, requires the general contractor, before receiving any payment, to furnish the owner with a statement of all sums due subcontractors, and if the general contractor fails to supply the required statement, he is guilty of a misdemeanor. N. C Gen. Stat., 1950, § 44–12. Finally, the court found further evidence of the direct and independent nature of the subcontractors' claims against the owner in N. C. Gen. Stat., 1950, § 44–9, which provides that should the owner pay the general contractor after receiving notice of a subcontractor's claim, he will nevertheless be liable to the subcontractor to the extent of the amount which was due under the construction contract at the time notice was received.

Based upon these considerations, the Court of Appeals held that, under North Carolina law, the general contractor did not have a property interest in the face amount, as such, of the general construction contract. Specifically, the court said that "except to the extent the claim of the general contractor exceeds the aggregate of the claims of the subcontractors, the general contractor has no right which is subject to seizure under the tax lien." *Id.*, at 574. Therefore, concluded the court, since under North Carolina law the taxpayers possessed merely a right to the residue of the fund, and since the Government's tax lien attached to the property interests of the taxpayers as defined by state law, the Government can recover only "so much of the construction price as will

remain unpaid after the owners have deducted a sum sufficient to pay the subcontractors." *Id.*, at 575.

The Court of Appeals was correct in asserting that the Government's tax lien attached to the taxpayers' property interests in the fund as defined by North Carolina law. *Aquilino* v. *United States, ante,* pp. 509, 513;[4] *United States* v. *Bess,* 357 U. S. 51, 55; cf. *Morgan* v. *Commissioner,* 309 U. S. 78, 82. It is suggested that the courts of North Carolina have never specifically described the nature of the property rights created by the North Carolina statutes involved in this case, and that the Court of Appeals' interpretation of those statutes is probably incorrect. However, where "[t]he precise issue of state law involved . . . is one which has not been decided by the . . . [state] courts," this Court has said that, "[i]n

---

[4] This case points up the distinction we drew in *Aquilino.* The facts here show how it simply begs the question to suggest that the principle of the lien-priority cases is somehow subverted or evaded by recognizing that what constitutes the taxpayer's property in the first place is a question of state law. The facts show, too, that it does not promote clarity to substitute, for the property interests created by state law, a rule of federal property law, the main feature of which seems to be an inquiry into what the consequences would be if state law were different from what it in fact is. It is said that we should regard the subcontractor's interest as equivalent to a lien on the general contractor's claim against the owner, overlooking the fact that the law of North Carolina, as interpreted by the Court of Appeals, indicates that there is no such claim. If we are to equate the subcontractor's interest with something it is not, it would be much more appropriate, in terms of similarity, to equate it with the usual mechanic's lien of a subcontractor on the owner's property being improved—which of course is not the general contractor's property, and which could not be taken by the United States under a lien against the general contractor. This only points up the lack of precision and content in the proposed federal definition of property. See also *Fidelity & Deposit Co. of Md.* v. *New York City Housing Auth.,* 241 F. 2d 142 (C. A. 2d Cir.), cited with approval in *United States* v. *Bess,* 357 U. S. 51, 55.

dealing with issues of state law that enter into judgments of federal courts, we are hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable." *Propper* v. *Clark*, 337 U. S. 472, 486–487. Since the Court of Appeals is much closer to North Carolina law than we are, and since we cannot say that the court's characterization of the taxpayers' property interests under that law is clearly erroneous or unreasonable,[5] the judgment is

*Affirmed.*

[For dissenting opinion of MR. JUSTICE HARLAN, concurred in by MR. JUSTICE BLACK, see *ante*, p. 516.]

---

[5] See *Sims* v. *United States*, 359 U. S. 108, 114; *Ragan* v. *Merchants Transfer & Warehouse Co.*, 337 U. S. 530, 534; *Estate of Spiegel* v. *Commissioner*, 335 U. S. 701, 707–708.