The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Plaintiff,

v.

Edward DYKSTRA and Eugene Roelofs, d/b/a Dykstra and Roelofs Construction Company, Defendants,

and

State of Minnesota and County of Meeker, Garnishees,

and

The State of Minnesota and The United States of America, Additional Defendants.

No. 4-59-Civ.-331.

United States District Court
D. Minnesota,
Fourth Division.

Sept. 21, 1962.

M. Lasley, Minneapolis, Minn., for plaintiff.

John R. Murphy, Sp. Asst. Atty. Gen., St. Paul, Minn., for garnishees, State of Minnesota and County of Meeker.

Miles W. Lord, U. S. Atty., and John J. Connelly, Asst. U. S. Atty., Minneapolis, Minn., for additional defendant United States.

DEVITT, Chief Judge.

Money originally held by the State of Minnesota in the form of a warrant payable to the Dykstra and Roelofs Construction Co., hereinafter referred to as Dykstra, and now in the possession of the United States Government by reason of

it being seized by the agents of the Internal Revenue Service, is claimed by both the plaintiff-surety—which became responsible, under a bond, for default in the payment of labor and materialmen by Dykstra as required in a road contract—and the United States which seeks taxes owed by Dykstra.

The facts are not in dispute and are set out in the following Stipulation of Facts and Issues:

## "I.

"That on or about August 11, 1958, plaintiff issued, in response to an application for same, a surety bond on behalf of Dykstra and Roelofs Construction Company, in connection with the construction of a road job in the County of Meeker, known as Contract No. 9821, SP 47–672–02 and SP 47–672–01, all as set forth in said application and surety bond, said bond to be given to the State of Minnesota and County of Meeker, whereby plaintiff agreed to complete said job in the event of default and to pay all proper charges for the construction, all as set forth in said contract.

## "II.

"That said Dykstra and Roelofs Construction Company defaulted on said contract in that they were unable to make payment of substantial labor and material bills and under and by virtue of said bond, plaintiff herein was required to and did pay out to materialmen for labor and material furnished on said job, the sum of $21,640.54, and plaintiff became subrogated to the rights of said contractor, Dykstra and Roelofs Construction Company for any balance or retained percentages due under said contract from the State of Minnesota.

## "III.

"That on September 17, 1959, an action was commenced by plaintiff herein against defendant, Dykstra and Roelofs Construction Company

for recovery of said aforementioned payments, and default judgment thereon was entered for plaintiff in the sum of $21,659.04.

## "IV.

"That on the 17th day of September, 1959, a garnishment action was also instituted wherein the State of Minnesota and County of Meeker were named as garnishees and service effected on the State of Minnesota on the 18th day of September, 1959. The State of Minnesota, through one of its Special Attorneys General, made a garnishment disclosure on September 28, 1959, wherein it stated that on September 17, 1959, at the time of the service of the garnishment summons, there was due and owing to the above-named Dykstra and Roelofs Construction Company from the State of Minnesota, the sum of $9,495.30, under the terms of Contract No. 9821, SP 47–672–02 and SP 47–672–01. It further disclosed that the District Director of Internal Revenue claimed ownership of, or interest in, the money by reason of a tax lien against the Dykstra and Roelofs Construction Company in the sum of $10,894.73 by virtue of Service on the State of Minnesota, Department of Highways on August 11, 1959 of a Notice of Levy, and by virtue of service on the State of Minnesota, Department of Highways, on September 15, 1959, of a final demand in the amount of $10,894.73.

## "V.

"That on or about June 2, 1959, a notice of tax lien against the defendants, Edward D. Dykstra and Eugene Roelofs, d/b/a Dykstra and Roelofs Construction Company in the amount of $10,372.06 was filed by the District Director, Internal Revenue Service, for the District of Minnesota, with the Register of Deeds, Renville County, Minnesota, and that on or about July 1, 1959, a similar and identical notice of tax

lien against the said defendants was filed with the Register of Deeds, Kandiyohi County, Minnesota, said notices of tax lien being with respect to those assessments duly made by the District Director of Internal Revenue Service against the said defendants in the amount of $106.75 on November 21, 1958, in the amount of $3,790.99 on March 20, 1959, pursuant to the provisions of Section 6321 and Section 6323 of the Internal Revenue Code of 1954.

"VI.

"That on September 18, 1959, agents of the Internal Revenue Service, an agency of the Treasury Department of the United States of America, seized the warrant issued by the State of Minnesota from the office of the Highway Department, payable to Dykstra and Roelofs Construction Company in the amount of $9,495.30, being the amount due Dykstra & Roelofs in the disclosure made by the State of Minnesota hereinbefore set forth, and that said warrant is now in the custody of the United States of America or an agency thereof."

The contract between Dykstra on the one hand and the State of Minnesota and the County of Meeker on the other, contained the following pertinent provisions regarding Dykstra's obligation to make payment to materialmen and labor before becoming entitled to payment from the State and County:

"[T]he contractor, in consideration of the payment of the contract price therefor * * * agrees to furnish all materials * * * all necessary tools and equipment, and do and perform all the necessary work and labor for the full completion of [the project] as shown in the approved Plans, for the price and compensation set forth and specified in the proposal signed by the Contractor, which is hereto attached and hereby made a part of this agreement, *all in accordance with the Plans, Specifications and Special Provisions therefor on file in the office of the Commissioner and hereby made a part of this agreement.*"

(Emphasis added.)

The reference in the contract to Specifications is a reference to a Department of Highways Manual, Specifications for Highway Construction (1947). This Manual, which was operative when the contract in the instant case was signed, provides in section 1908, pages 52–53:

"Upon the execution of the 'Certificate for Final Payment' by the Contractor and his presentation of the written approval of the Surety or Sureties, the State will make final payment; however, *the State may at its discretion withhold final payment until the Contractor has filed with the State an affidavit showing evidence that all claims against him by reason of the Contract have been paid or satisfactorily secured.* In case such evidence is not furnished, *the State may retain, from any amount due said Contractor, sums sufficient to cover all lienable claims unpaid.*" (Emphasis added.)

In the instant case, the State retained some $9,495 from Dykstra. This sum represented the accumulation of the retained percentage of prior payments and the final current payment then due to the Contractor.

The present action seeks a resolution of the priority between the tax lien of the United States and the interest of the plaintiff to the funds represented by the state warrant. Said suit is authorized by 28 U.S.C.A. § 2410.

The claim of the United States is based upon 26 U.S.C.A. § 6321 which provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all *property and rights*

*to property,* whether real or personal, belonging to such person."

(Emphasis added.)

The plaintiff-surety is not basing its action upon any theory of being the assignee of Dykstra and as such entitled to any and all sums due or to become due under the contract with the State and County. Rather, the action is based upon the theory that plaintiff is a completing surety; that is, upon the theory of subrogation. Thus, the Court is not called upon to determine what the respective rights of the litigants herein would be under a case based upon an assignment. The line of cases dealing with that subject, United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956); United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958), hold that under Federal law for a lien to be valid it must be choate, and in the case of a surety's lien growing out of an assignment, it is inchoate, and therefore not on the same footing as the Federal tax liens. But as said earlier, these cases are not controlling in determining the rights of a completing surety, and in such instance, the sole question to be resolved is whether the defaulting contractor had property or rights to property in the funds withheld by the State. See United States for Use of Home Indemnity Co. v. American Employers' Ins. Co., 192 F.Supp. 873, 876 (D.N.D.1961), where the distinction between the two types of suits referred to was adopted by that Court.

 The issue which is first presented is that of determining what constitutes "property" for the purpose of section 6321, supra. Both the plaintiff and the United States agree that such a question is to be governed by the law of the State of Minnesota; that is, the Court must look to the interests, if any, acquired under state law to determine if a property interest exists to which the lien provided for in section 6321 can attach. As said by the United States Supreme Court in Aquilino v. United States, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960):

> "The threshold question * * * in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * sought to be reached by the statutes.' "

See also United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057 (1958), where the Court said:

> "§ 3670 [now § 6321] creates no property rights but merely attaches consequences, federally defined, to rights created under state law * * *."

To the same effect is United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

██ The plaintiff and the United States regard this action as one in which the plaintiff stands in the shoes of a completing surety with the subrogation rights which attach thereto. The disagreement between the parties is over what rights do in fact attach. Upon default by Dykstra in payment of labor bills and materialmen, the surety assumed its responsibility and paid these charges. In so doing the surety became subrogated to the rights of *these creditors,* not, as indicated in the stipulation, to the rights of Dykstra, who, as will be shown *infra,* may have lost all of

his rights because of his default. Pursuant to the doctrine of subrogation, the surety is entitled to all the rights and remedies of the creditors. See Dunnell, Subrogation § 9044, n. 49; Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); Arant, Suretyship, pp. 357–58; Simpson, Suretyship, p. 206. Thus, plaintiff in the instant case became subrogated to the rights of those persons on whose behalf payment was made when Dykstra was unable to perform his obligations under the contract.

Before looking to the law of Minnesota in regard to the problem of determining whether a property right existed, it is necessary to examine the terms of the contract to see what rights and obligations were intended by the parties. This contract, like all public contracts with the State of Minnesota, contains a provision which requires the contractor to make full payment to all of his labor and materialmen before becoming entitled himself to any funds which have been withheld pending the completion of the construction. The contract clearly indicates that it was the intent of the parties thereto that a failure by the contractor to pay for his labor costs and materialmen was just as much a failure to perform and carry out the terms of the contract as an abandonment of the work would have been. See Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 241 F.2d 142 (2d Cir. 1957), to the same effect in construing the law of New York in relation to a construction contract containing basically the same provisions as contained in the contract of the instant case. There the Second Circuit Court of Appeals relied heavily upon United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226 (1947), in which the New York Court of Appeals looked to the terms of the contract itself to determine the rights of the parties thereto. For other cases from other jurisdictions involving contracts

with provisions requiring the payment of labor and materialmen as a prerequisite of payment of the entire contract price, see Central Surety & Ins. Corp. v. Martin Infante Co., 272 F.2d 231 (3d Cir. 1959) (New Jersey); United States Fidelity & Guaranty Co. v. United States, 201 F.2d 118 (10th Cir. 1952) (New Mexico); Wolverine Ins. Co. v. Phillips, 165 F.Supp. 335 (D.Iowa 1958); United States Fidelity & Guaranty Co. v. Miller, 143 F.Supp. 941 (D.N.C.1956); Scott v. Zion Evangelical Lutheran Church, 75 S.D. 559, 70 N.W.2d 326 (1955).

Having determined that the contract itself contemplates a breach whenever the contractor fails to pay materialmen and labor, plaintiff surety proceeds to ask this Court to then apply the general principle of law that a material failure of performance by one party to a contract not justified by the other's conduct, discharges the latter's duty to give the agreed exchange. Restatement, Contracts, §§ 274, 275; Dunnell, Contracts § 1803 n. 55 and cases cited therein. The Court is of the view that Dykstra's failure to pay did deprive the contractor of its right to unqualified payment for the work done and that the funds so held by the State were not the property of the construction company. The money was retained for one purpose —to assure the payment of the creditors of Dykstra. In paying these persons, plaintiff-surety became subrogated to their rights and in so doing acquired both the legal and equitable right to the funds retained by the State up to the amount which the plaintiff had in fact paid out under its agreement. Any other result would prove inequitable to the surety. To deny the surety the first claim on these funds after he has performed his obligation would be to allow the contractor a right to funds to which, but for the action of the surety, he would not by the very terms of the contract be entitled.

The United States places heavy reliance upon American Surety Co. of

New York v. Board of County Commissioners, 77 Minn. 92, 79 N.W. 649 (1899), wherein the surety of a defaulting contractor sued the Board of County Commissioners because the Board had paid part of the retained percentage payment due on the contract involved therein to one of the *general* creditors of the contractor over the timely objection of the surety which claimed that the amount should be paid to laborers and materialmen. The rationale of the Court's decision, holding that the Board was not liable to the surety in making said payment, was that the funds, other than the retained percentage, belonged to the contractors even though it had not paid its labor and material costs. In that case, the contract called for the retention of 15% of the funds due each month, and the Court reasoned that as to the remaining 85% the contractor had an unqualified right of payment. In the instant case, however, the contract calls for the retention of "sufficient" funds until the labor and material costs of the contractor have been met. "Sufficient" is not limited to a retained percentage, but rather is broad enough to encompass all payments due the contractor. It would appear to the Court that the contract provision in the instant case requiring payment of materialmen and labor is in the nature of a dependent condition, the fulfillment of which is a prerequisite to a right to receive the agreed-upon exchange. In Gilloley v. Sampson, 203 Minn. 233, 281 N.W. 3 (1938), the Minnesota Supreme Court said:

> "Whether covenants are dependent so that the performance by one party is conditioned upon performance by the other, or independent so that performance is not so conditioned, is a matter of *intention.* * * * Ordinarily, performance of the entire contract by [the contractor], including both the doing of the work and furnishing of equipment, and the *payment of all bills and expenses for material and equipment,* would

be required before he would be entitled to payment * * *." 203 Minn. at 240–241, 281 N.W. at 6–7.

(Emphasis added.)

In the instant case, the terms of the contract make it quite clear that it was the *intention* of the parties that Dykstra would be required to pay for materials and labor before becoming entitled to his agreed-upon remuneration for the services performed. Such intent is the equivalent of making payment of these materials and labor a condition of receiving payment from the State. See also National Exchange Bank of St. Paul v. Solberg, 175 Minn. 436, 221 N.W. 677 (1928); Johnson v. Laurence, 171 Minn. 202, 214 N.W. 24 (1927).

Having determined that American Surety Co. of New York v. Board of County Commissioners, supra, does not control the issue here presented, this Court finds that the contract in the instant case was breached by Dykstra and that breach excused the State of Minnesota from its obligation to make payment to Dykstra. It follows, there being no debt owing from the State to Dykstra, that there is no "property" to which the lien of the United States could attach. For other cases in which the surety has prevailed on the "no debt" theory, see Wolverine Insurance Co. v. Phillips, supra; Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, supra; Great American Indemnity Co. v. United States, 120 F.Supp. 445 (D.D.C.1954); United States Fidelity & Guaranty Co. v. Miller, supra; Colusa-Glenn Production Credit Ass'n v. Phoenix Ins. Co., 145 F.Supp. 844 (D.D.C.1956); Scott v. Zion Evangelical Lutheran Church, supra.

It is the view of the Court that the plaintiff-surety, and not the United States, is entitled to the disputed $9,495.30.

The Court will sign appropriate findings.