IDECO DIVISION OF DRESSER IN-
DUSTRIES, Inc., Plaintiff-Appellee,

v.

CHANCE DRILLING COMPANY, Inc.,
et al., Defendant,
Small Business Administration, Impleaded
Defendant-Appellant.

No. 27151.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1970.

Anthony J. P. Farris, U. S. Atty.,
James R. Gough, Asst. U. S. Atty.,
Houston, Tex., William D. Ruckelshaus,
Asst. Atty. Gen., Leonard Schaitman,
Robert V. Zener, Daniel Joseph, Attys.,
Dept. of Justice, Washington, D. C., for
defendant-appellant.

J. Daffan Caldwell, William R.
Choate, John L. McConn, Jr., Butler,
Binion, Rice, Cook & Knapp, Sam S.
Minter, Minter & Mahon, Houston, Tex.,
for plaintiff-appellee.

Before GEWIN, THORNBERRY and
AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge.

This interpleader action concerns the
competing claims of the Small Business
Administration (SBA) and Ideco Divi-
sion of Dresser Industries (Ideco) to a
sum of money ($16,869.45) owed by
Gulf Leaseholds, Inc. (Gulf) to Chance
Drilling Company (Chance). Gulf initi-
ated these proceedings in a Texas state
court and SBA removed the case to the
United States District Court for the
Southern District of Texas establishing
jurisdiction under the provisions of 28
U.S.C. § 1442(a) (1). The district
court entered a judgment for Ideco and
SBA brings this appeal. We affirm.

The record reveals the following
facts: On September 22, 1960, the Bank
of Texas, in participation with SBA,
loaned Chance $350,000. SBA supplied
ninety percent of the loan, and Chance's
note for the full amount was subse-
quently assigned to SBA. In October of
the following year Chance entered into a
drilling contract with Gulf and pursuant
thereto immediately undertook to drill a
well for the production of oil and gas on
a leasehold owned by Gulf and others.
Gulf's indebtedness to Chance arose as a
result of work performed by Chance un-
der this contract.

In December 1961, while drilling for
oil on Gulf's leasehold, Chance's drilling
rig was damaged by fire. Chance ob-
tained parts and service for the on-site
repair of the rig from Ideco. In May
1962, because Chance had failed to pay
for these repairs, Ideco notified Chance
and the owners of the oil and gas lease-

hold that by virtue of Texas law it claimed a lien of $14,477.35 plus interest on the leasehold, its oil and gas production, and the well machinery and pipelines. Ideco filed suit in September 1963 to foreclose the lien, and Gulf was named as a party defendant. Gulf, aware of Chance's indebtedness to both SBA and Ideco, filed a bill of interpleader, paid $16,869.45 which it owed Chance into the registry of the court, and impleaded SBA. After the case was removed to federal district court by SBA, Ideco filed a motion for a summary judgment. SBA objected on the ground that a material question of fact remained to be determined, i. e., whether the federal priority statute, 31 U.S.C. § 191, quoted hereafter, applied to give SBA's claim preference over all others. Ideco responded by admitting that it had been insolvent since December 25, 1960, and both parties then requested a summary judgment.

The district court made the following findings: (a) 31 U.S.C. § 191 became applicable in the instant case on December 27, 1962 when the debtor committed an act of bankruptcy by allowing a judgment against it to remain unsatisfied for thirty days.[1] (b) Ideco perfected its lien as prescribed under Texas law on July 6, 1962. (c) Under Texas law, perfecting the lien divested Chance of any property interest in the debt owed to it by Gulf.[2] The court concluded that since the priority statute only gives SBA a preference in payment out of the insolvent debtor's property and since Chance's property interest in the debt had been divested by state law almost six months before the priority statute became applicable, the statute would not give SBA a priority in payment out of funds which represent the debt. On this appeal, SBA contends that the scope of an insolvent debtor's property interests at the time when the priority statute becomes applicable should be defined by federal rather than state law.

■ Title 31 U.S.C. § 191 provides:

Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not

---

[1.] Although the debtor was insolvent in December 1960, the district court correctly found that this fact alone is not sufficient to give SBA the benefit of the priority statute. Justice Story, writing in Conard v. Atlantic Insurance Company of New York, 26 U.S. 386, 7 L.Ed. 189, 212 (1828) stated:
> [A] mere inability of the debtor to pay all his debts is not insolvency within the statute; but it must be manifested in one of the three modes pointed out in the explanatory clause [of the statute].

In United States v. Oklahoma, 261 U.S. 253, 262, 43 S.Ct. 295, 298, 67 L.Ed. 638 (1922) the Court outlined the "three modes" as follows:
> In order to give the priority specified in Section 3466, there
>> must be a case of an insolvent debtor who makes a voluntary assignment of his property, or a case in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, or a case in which an act of bankruptcy is committed.

See, City of Sherman v. United States, 400 F.2d 373 (5th Cir. 1968); W. T.

Jones & Co. v. Foodco Realty, Inc., 318 F.2d 881 (4th Cir. 1963).

The district court found that Chance committed an act of bankruptcy within the meaning of 11 U.S.C. § 21(a) (3) by failing to discharge within thirty days a judgment entered on November 27, 1962.

[2.] We are of the opinion that the district court correctly interpreted Texas law. In Green v. H. E. Butt Foundation, 5 Cir., 217 F.2d 553, 554 (1954), this court stated:
> Under the lien laws of Texas, the H. E. Butt Foundation was relieved of its indebtedness to the contractor as soon as the above-mentioned liens were filed and perfected. Such liens seize and appropriate for the benefit of the lienors any money in the hands of the owner that is due or may become due and payable to the contractor.

See Texas Civil Statutes, Articles 5473, 5474, 5476 and 5476a, 5476b & 5476c; Stanfill v. Penniman Gravel and Material Co., 27 S.W.2d 135 (Tex.Com.App.1930); Wilson v. Sherwin-Williams Paint Co., 110 Tex. 156, 217 S.W. 372 (1919).

having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. This section is often referred to as Section 3466 R.S. and comes to us without significant modification from Section 5 of the Act of March 3, 1797, c. 20, 1 Stat. 515.[3] The priority claimed by the United States rests exclusively on this statute. It is important to note at the outset that this statute does not create a lien in favor of the United States.[4] Where applicable, the statute merely gives the United States a preferred position in the distribution of an insolvent debtor's property.[5] The issue before us in the instant case is whether state law or federal law shall define what is and what is not the property of an insolvent debtor.

The district court relies heavily on the Supreme Court's decisions in Aquilino v. United States and United States v. Durham Lumber Co.[6] in resolving this issue in favor of state law. Both *Aquilino* and *Durham* involve the competing claims of the United States (under a federal tax lien)[7] and subcon-

tractors (asserting state-law liens) to a sum of money owed by a landowner to a contractor under a general construction contract. The tax lien asserted by the United States extended to the "property and rights to property" of the taxpayer-contractors. The issue in both cases was whether federal or state law should define the contractors' "property and rights to property." The Court held that the tax lien attached to the contractors' property interests as defined by state law. This conclusion was based on the well-settled rule that the federal revenue act creates no property rights but merely attaches federally defined consequences to property rights which are defined by state law.[8] Application of this principle in *Durham* resulted in a decision favoring the subcontractor since North Carolina law provides that once a subcontractor perfects a lien, the contractor has no property interest in the money owed to him by the landowner except to the extent that it exceeds the amount necessary to pay the subcontractor-lienholders. The Court remanded *Aquilino* for a determination of the contractor's state-law property interest in the money owed by the landowner.

SBA contends that the district court erroneously relied on the *Aquili-*

---

**3.** As originally enacted, the priority statute differs from its present form (31 U.S.C. § 191) only in the wording of the first clause which provides:
And be it further enacted, that where any revenue officer, or other person, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent * * *.
This clause was interpreted by Chief Justice Marshall in United States v. Fisher, 6 U.S. 358, 2 L.Ed. 304 (1804) to have the same meaning as the corresponding phrase in 31 U.S.C. § 191 (1964).

**4.** Beaston v. Farmers' Bank of Delaware, 37 U.S. 102, 9 L.Ed. 1017, 1029 (1838).

**5.** *See* United States v. Texas, 314 U.S. 480, 484, 62 S.Ct. 350, 86 L.Ed. 356 (1941); Beaston v. Farmers' Bank of Delaware, 37 U.S. 102, 9 L.Ed. 1017 (1838); Conard v. Atlantic Ins. Co., 26 U.S. 386, 7 L.Ed. 189 (1828); Thelusson v. Smith, 15 U.S. 396, 4 L.Ed. 271, 278 (1817); Unit-

ed States v. Fisher, 6 U.S. 358, 2 L.Ed. 304 (1804); United States v. Haddix & Sons, Inc., 249 F.Supp. 88 (E.D.Mich. 1965); United States v. Menier Hardware No. 1, Inc., 219 F.Supp. 448 (W.D. Tex.1963).

**6.** 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

**7.** In *Aquilino*, the tax lien was established by Sections 3670 and 3671, Internal Revenue Code of 1939. In *Durham*, the lien was imposed under Sections 6321 and 6322, Internal Revenue Code of 1954. These sections are identical.

**8.** Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1939); and United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed. 2d 1135 (1958) are cited by the Court in support of this proposition.

*no-Durham* rationale in deciding the instant case. Those cases should be distinguished from the instant case, according to SBA, because they do not involve the federal priority statute. SBA emphasizes two respects in which the tax lien statute under consideration in *Aquilino* and *Durham* differs from the priority statute. First, the tax lien statute applies to the property of solvent debtors and the priority statute applies to the property of insolvent debtors. Second, the priority statute gives an unqualified preference in payment out of a debtor's assets while the tax lien must vie with other claims.

Assuming that the differences suggested by SBA are valid, we nevertheless find it difficult to determine precisely how they militate against applying the *Aquilino-Durham* rationale in the instant case. In *Aquilino*, Chief Justice Warren persuasively stated the Court's reasons for rejecting the government's contention that federal law should define the debtor-taxpayer's property interests:

> It is suggested that the definition of the taxpayer's property interests should be governed by federal law, although supplying the content of this nebulous body of federal law would apparently be left for future decisions. We think that this approach is unsound because it ignores the long-established role that the States have played in creating property interests

and places upon the courts the task of attempting to ascertain a taxpayer's property rights under an undefined rule of federal law. It would indeed be anomalous to say that the taxpayer's property and rights to property included property in which, under the relevant state law, he had no property interest at all.[9]

SBA is apparently arguing that the Court's rationale should not be applied in the instant case because the unqualified priority established by 31 U.S.C. § 191 indicates a stronger congressional policy to protect the treasury than is evidenced by the tax lien statute, and that a "federal law of property rights" is necessary to implement this policy. It is important to understand that SBA is suggesting that debts owed the United States be satisfied by expropriating property to which the insolvent debtor has no right, title or interest under state law. We are not convinced that the concern expressed by Congress in the priority statute demands such a drastic step. Furthermore, if the action urged by SBA were necessary to protect public monies, it seems reasonable to assume that Congress would have *specifically* adopted such a plan at some point in the one hundred seventy year history of the priority statute.

In conclusion, we are convinced that the policy underlying the priority statute is not subverted by limiting the United States in the collection of debts

---

9. 363 U.S. 509, 513 n. 3, 80 S.Ct. 1277 (1960). Chief Justice Warren, speaking to the same point, made the following comment in *Durham*:

> This case points up the distinction we drew in Aquilino. The facts here show how it simply begs the question to suggest that the principle of the lien-priority cases is somehow subverted or evaded by recognizing that what constitutes the taxpayer's property in the first place is a question of state law. The facts show, too, that it does not promote clarity to substitute, for the property interests created by state law, a rule of federal property law, the main feature of which seems to be an inquiry into what the consequences would be if

state law were different from what it in fact is. 363 U.S. 522, 526 n. 4, 80 S.Ct. 1282 (1960).

The Aquilino-Durham rationale was reaffirmed in Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963), which concerned the applicability of the tax lien statute to certain property of a deceased taxpayer. In that case, the Court refused to apply the equitable principle of "marshaling" to reach the proceeds of a life insurance policy where state law specifically exempted insurance benefits of a widow from the claim of creditors of her husband's estate. *See also*, United States v. Yazell, 334 F.2d 454 (5th Cir. 1964); affirmed 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966).

under 31 U.S.C. § 191 to the insolvent debtor's property as defined by state law. Of course, our holding here would not withstand congressional direction to the contrary. On the other hand, we are extremely reluctant to begin the development of a "federal common law of property" without an explicit congressional mandate.

Affirmed.