Argued December 3, 1973, affirmed June 27, 1974

CRAPPER ET UX, *Respondents, v.*
BERLINER'S INC., *Defendants,*
STADELMAN ET AL, *Respondents,* UNITED
STATES OF AMERICA, *Appellant.*
523 P2d 1025

*Charles E. Anderson,* Washington, D. C., argued the cause for appellant. With him on the briefs were Scott P. Crampton, Assistant Attorney General, Meyer Rothwacks and Richard W. Perkins, Washington, D. C., Sidney Lezak, United States Attorney, and Venita Jo Neal, Assistant United States Attorney, Portland.

*Ronald M. Somers,* The Dalles, argued the cause and filed a brief for respondent Oregon Radio KACI, Inc.

*Roger L. Dick,* The Dalles, argued the cause for respondents George Stadelman, Wilbur Stadelman and Bailey, Clark & Byers. With him on the brief were Dick & Dick, The Dalles.

DENECKE, J.

The issue is whether the United States has a tax lien having priority over competing claims to certain interpleaded funds.

McAllister, J., did not participate in this decision.

The delinquent taxpayer, Mrs. Parrish, operated a beauty parlor; she had numerous creditors. Mrs. Parrish contracted to sell the assets of her business to the Crappers, the plaintiffs. They thought that, possibly, the Bulk Sales Act (ch 76 ORS) was applicable; therefore, they notified creditors of the proposed sale. The Crappers paid the sales price to Mr. Parker, attorney for the Crappers, who deposited it in his trust account. According to the agreement of the parties to the sale, Mr. Parker was to pay the creditors from these moneys.

The Crappers filed this interpleader suit on February 24, 1971, and deposited into court the funds held by Mr. Parker. Various creditors, including the United States, filed claims. The trial court held the interpleader did lie. It further held that the United States was entitled to a lien for $94.78, the amount of unpaid taxes for which assessments were made on December 4, 1970, and prior thereto. The court ordered that the other creditor claimants be paid in full and that the remainder of the funds, approximately $300, which would be payable to Mrs. Parrish, be paid to the United States as payment in part of taxes she owed. The result of the decree is that the United States fails to collect approximately $3,000 from the fund interpleaded. The United States appeals.

The Internal Revenue Code of the United States provides that a lien for taxes owed arises when the taxes are assessed.[1] The Revenue Code further

---

[1] § 6322, 26 USCA: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

provides that the lien is "upon all property and rights to property * * * belonging to such person."[2]

The United States did not make an assessment for the $3,000 owed until after the seller had paid the purchase price to Mr. Parker and after the plaintiffs had filed an interpleader and deposited the fund with the court.

Under these statutes the narrow question is, did the taxpayer have a "property" interest in or "rights," as those words are used in the statute, to the fund at the time of the assessment.

■ The United States rightfully states that this question is to be answered by state law. *Aquilino v. United States,* 363 US 509, 80 S Ct 1277, 4 L Ed2d 1365 (1960). The function of state law in deciding this question, however, is unusual. State law decides the relationship of the delinquent taxpayer to the moneys; this is usual. However, it is unusual that state law should govern the interpretation of a federal statute, as it does here in determining whether this relationship is such that the taxpayer has a "property" interest in the fund.

*United States v. Durham Lumber Co.,* 363 US 522, 80 S Ct 1282, 4 L Ed2d 1371 (1960), illustrates this use of state law. The delinquent taxpayer was a general contractor. The general contractor owed certain subcontractors for work done on the project. The

---

[2] § 6321, 26 USCA: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

owners of the project held the balance due the general contractor on the construction contract. The government filed its assessments for delinquent taxes after the building was completed and after the debts of the subcontractors became due, but before the subcontractors notified the owners that their claims were unpaid. Under the applicable state law, unpaid subcontractors have a direct, independent cause of action against an owner to the extent of any moneys due from the owner to the general contractor. Funds in the hands of an owner owed under the construction contract must first be used to satisfy subcontractors' claims. Other provisions of state law tried to insure that the subcontractors would be paid from funds held by an owner.

The Court stated: "Based upon these considerations, the Court of Appeals held that, under North Carolina law, the general contractor did not have a property interest in the face amount, as such, of the general construction contract." 363 US at 525. The Court held, therefore, that the subcontractors were entitled to be paid from the funds held by the owner before the government's taxes were payable.[9]

In this analysis, the first step is to determine the relationship between the various parties according to Oregon law. The written contract between the seller, the delinquent taxpayer, and the Crappers is uninformative. It provides the Crappers shall pay the purchase price, $4,600, "upon completion of com-

[9] The opinion of the New York Court of Appeals in *Aquilino,* after remand by the United States Supreme Court, assists in understanding the function of state law. Aquilino v. United States, 10 NY2d 271, 219 NY Sup2d 254 (1961). See, also, Jordan, *The Rights of a Surety Upon the Default of Its Contractor-Principal,* 41 Or L Rev 1, 17 (1961).

pliance with the Oregon Bulk Sales Law." The notices to the creditors, however, are more illuminating. In addition to the usual information, the notices state:

> "All the debts of the transferor are to be paid if there are sufficient funds in full as they fall due as a result of the transaction; * * * the address to which transferor's creditors should send their bills is: Parker & Abraham, 205 Third St., Hood River, Oregon 97031.
>
> "* * * * *.
>
> "(c) The foregoing transfer is to pay transferor's existing debts; * * *
>
> "* * * * *.
>
> "(d) The transfer is for a new consideration; * * * the total purchase price was $4,800.00 less the amount of the lien on the equipment of $1,294.61 to leave for unsecured creditors $3,505.39 to be paid and delivered on or after January 22, 1971, at the following places: Parker & Abraham, 205 Third St., Hood River, Oregon 97031."

The Crappers alleged in their complaint of interpleader: "That the remainder of the purchase price ($4,800.00 less $1,294.61) in the amount of $3,505.93 was in the hands of Vawter Parker as attorney for plaintiffs for distribution first to any creditors of defendant Ruth Lugene Parrish and second to defendant Ruth Lugene Parrish." This was denied by the United States upon the ground it had no information or belief of the facts alleged. However, the evidence is uncontradicted that the agreement between the seller and the buyers was that in consideration of the seller-taxpayer transferring her property to the buyers, the buyers would deposit the purchase price with their attorney. The attorney was to pay as many of the creditors as could be paid from the fund and to pay the seller any balance remaining.

The effect of such an agreement is clear in Oregon:

"The rule is established in Oregon that where a person as a full or part consideration for an executed contract, promises another to assume, pay or discharge some legal debt or obligation due from such other to a third person, the latter, though a stranger to the consideration and not an immediate party to the contract, may maintain an action thereon if the agreement was made directly or primarily for his benefit. * * *." *Davidson v. Madden,* 89 Or 209, 215-216, 173 P 320 (1918).

*Baker & Smith v. Eglin,* 11 Or 333, 334, 8 P 280 (1884), stated the rule more succinctly:

"On the second point, the authorities with us are quite decisive that when A., for a valuable consideration, agrees with B. to pay his debt to C., the latter can enforce the contract against A. * * *."

To the same effect see *Oregon Mill Co. v. Kirkpatrick,* 66 Or 21, 24, 133 P 69 (1913); *Sandgren v. Cain Lumber Co.,* 125 Or 375, 378, 264 P 865 (1928).[2]

In addition to the agreement between Mrs. Parrish and the Crappers creating rights in the third party creditors to bring an action on the agreement, it is implicit in the same agreement that Mrs. Parrish has no right to any part of the fund until all the creditors have been satisfied. The agreement in this case is analogous to a common-law assignment for the

---

[2] The agreements referred to in these cases are contracts for the benefit of third parties,—creditors. We have fully accepted the principles governing contracts for the benefit of third parties as set forth in 1 Restatement 151, Contracts § 133. Firemen's Ins. v. Motors Ins., 245 Or 601, 604, 423 P2d 754 (1967). One of these principles is that the third party beneficiary can maintain an action on the contract against the promisor, in this case, the Crappers.

benefit of creditors.[9] "An assignment whereby the debtor conveys all his property for the benefit of his creditors amounts to a complete cession or surrender of his property to his creditors." *Monteith v. Hogg,* 17 Or 270, 272, 20 P 327 (1889). Another way of stating the same proposition is that an assignment for the benefit of creditors cannot be revoked. *Howe v. Warren,* 154 Ill 227, 40 NE 472, 476 (1894).

■ To summarize, the creditors of the delinquent taxpayer had a direct right against the Crappers to secure payment out of the fund deposited; conversely, the delinquent taxpayer had no right to any of the funds deposited unless a remainder existed after the creditors were paid. Under these circumstances, we hold that the taxpayer had no "property" interest in or "rights" to the funds as those words are used in § 6321 of the Internal Revenue Code and, therefore, when the United States filed its assessment no lien was imposed on these funds.

The United States argues in this court that if its claim for priority is denied, nevertheless, it is entitled to a pro rata share of the funds along with the other creditors. This contention was not made in the trial court and, therefore, will not be considered.

Affirmed.

---

[9] The analogy to an assignment for the benefit of creditors cannot be a complete analogy:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." § 191, 31 USCA.