**FEDERAL INSURANCE COMPANY,**
Plaintiff,

v.

**CONSTRUCTORA MAZA, INC., et al., Defendant.**

**Civ. No. 78–2601.**

United States District Court,
D. Puerto Rico.

Aug. 29, 1979.

Otero Suro & Otero Suro, Hato Rey, P. R., F. Castro Amy, Fiddler, González &

Rodríguez, Dubón & Dubón, San Juan, P. R., for plaintiff.

José Raúl Cancio, Hato Rey, P. R., Ismael H. Herrero, Jr., San Juan, P. R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

The present action commenced in the Bankruptcy Court as part of a related series of cases dealing with the financial problems of Constructora Maza, Inc. The present suit concerns a dispute over who has superior rights to certain funds held by the financier of a construction project. In the present complaint the surety of the project claims entitlement to this fund.[1] By cross claim and counterclaim the contractor makes his claim to these funds. By a separate motion the receiver of the debtor contractor invokes his right to these funds. In a related action a third party claims, by way of assignment, its entitlement to these monies.[2] It is now before us on the surety's Motion for Summary Judgment. The contractor and receiver have filed their opposition to this Motion and have in turn filed their own cross Motions. The lender, who is in possession of the funds, has in general opposed all these Motions. The pertinent facts are discussed below:

On December 4, 1973 Constructora Maza, Inc. (contractor) as general contractor and the Segovia Development Corporation (owner) entered into a contract for the construction of the Segovia Condominium Building (the project) located in Hato Rey, Puerto Rico. The Federal Insurance Company (surety) issued payment and performance bonds guaranteeing to the owner the performance of said construction, the payment of labor and materials supplied for the project, and penalties arising out of non–performance of the same. The Housing Investment Corporation (lender) agreed to provide the owner with financing for the construction of the project. Pursuant to this loan agreement between the owner and the lender, and to other agreements with the contractor, all progress payments that were to be made under the construction agreement were to be disbursed by the lender directly to the contractor. Further, as part of these agreements the lender was to retain and hold a percentage of estimated amounts due monthly until final completion and acceptance of all work covered by the contract.

Because of financial problems the contractor was unable to finish the project and defaulted on its contract. On March 2, 1976 it filed for bankruptcy protection under Chapter XI of the Bankruptcy Act.[3] Subsequently, by Motion dated June 2, 1976, the owner sought leave to reject and terminate the construction contract. The Bankruptcy Court granted this request and allowed the owner and the surety to procure another contractor to terminate the unfinished portion of the contract. The Court further authorized the lender to make available to the owner any unused funds in the construction loan. Those amounts which were by contract to be retained until completion of the project, were to be held by the lender pending further order of the Court. This fund is the object of the present suit.

1. The procedural history of this suit is as muddled as the financial affairs of the debtor. The herein Plaintiff first made a request for this money by Motion in the Bankruptcy proceedings. After much argument on the Bankruptcy Court summary jurisdiction to entertain this request, the Bankruptcy Judge entered an Order, October 31, 1978, transferring the action to this Court for adjudication under our plenary jurisdiction. It was obvious, however, that the complaint as filed in the Bankruptcy Court demonstrated no independent source of jurisdiction that would allow us to entertain this suit. It was not until May 8, 1979 that Plaintiff satisfied jurisdiction pleading requirements by filing an amended complaint invoking diversity of citizenship under 28 U.S.C. § 1332. We note that one Defendant has yet to answer or otherwise plead in this cause.

2. *Constructora Maza, Inc. v. Banco de Ponce*, Civ. No. 76-1271. In this action Judgment was entered by Judge Templar on April 10, 1979. It is now pending appeal.

3. *In Re: Constructora Maza, Inc.*, Bankruptcy Number 76-68.

The amended complaint filed by the surety states as total retained funds the sum of $423,630.03. The lender's answer to this complaint admits total retained funds in this amount. See: Codefendant's Answer, par. 3. It is the surety's position that upon default of the contractor it was forced to assume completion of the project and pay laborers, materialmen, and subcontractors. To this effect its sets forth total disbursements of $759,467.09. The surety contends that under equity and law, funds retained under contract by the lender or owner of a project for proper completion ("retainages"), are due to the surety when this contractor has defaulted and it has assumed and satisfied construction obligations.

The surety's main basis of authority for this claimed right lies on *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1972). The facts and the issue in the case at bar and in *Pearlman*, supra, are not too different. As stated in the opening paragraph of *Pearlman*:

"This is a dispute between the trustee in bankruptcy of a government contractor and the contractor's payment and bond surety over which has the superior right and title to a fund withheld by the Government out of earnings due the contractor." *Id.* at p. 133, 83 S.Ct. at p. 233.

Upon the default of a bankrupt contractor working on a governing project, the surety made labor and material payments. "Under the terms of the contract, ..., the United States was authorized to retain and hold a percentage of estimated amounts due monthly until final completion and acceptance of all work covered by the contract." *Id.* at p. 134, 83 S.Ct. at pp. 233–234. Upon completion of the project the Government released these retainages to the bankrupt's trustee "on the assumption that it had been the property of the bankrupt at the time of adjudication and therefore had vested in the trustee by 'operation of law.'" *Id.* at p. 134, 83 S.Ct. at pp. 233–234. The surety then filed a petition for recovery of these retained funds. The Supreme Court discussed the applicability of §§ 64, and 70 of the Bankruptcy Act, 11 U.S.C. §§ 104, 110, and the Miller Act, 40 U.S.C. § 270a *et seq.*[4] It found that neither controlled a situation involving property interest of the bankrupt in a fund not owned by the bankrupt at the time of adjudication. The Court then went on to apply general equity principles in reasoning:

"Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise such as the surety here had. And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all rights of the person he paid to enforce his right to be reimbursed." *Id.* at p. 137, 83 S.Ct. at p. 235. (Footnotes omitted).

The Court went on to conclude that under the principle of the "right of subrogation", *Id.* at p. 137, 83 S.Ct. at p. 235, a surety who honors his obligation to pay laborers and materialmen "is entitled to the benefit of all these rights to the extent necessary to reimburse it." *Id.* at p. 141, 83 S.Ct. at p. 237. By its facts, reasoning and holding *Pearlman* is most persuasive.

The Defendant contractor in its cross Motion argues that since federal jurisdiction in this suit is predicated on diversity of citizenship[5] local law would govern, and that as such, local law would compel a different result than that reached in *Pearlman*. The contractor points out that there are notable differences of fact which distinguish this case from *Pearlman*. Particularly important under the contractor's analysis of the problem is its argument that Plaintiff can not have a superior right to the retainages before the filing of the bankruptcy petition because local surety statutes grant no right to the surety which would be superior to that which is assumed by a trustee under

---

**4.** Among other things the Miller Act provides that government contracts must be guaranteed by payment and performance bonds. 40 U.S.C. § 270a.

**5.** See note 1., supra.

§ 70 of the Bankruptcy Act.[6] The rationale behind this argument is that Puerto Rican subrogation principles are less expansive than those recognized under general common law subrogation as stated in *Pearlman*.[7]

Unlike the situation in *Pearlman*, Puerto Rico does statutorily provide for subrogation under security type contractual relationships. See: Article 1721–1755 Civil Code of P.R., 31 L.P.R.A. §§ 4871–4973. But like *Pearlman* the basic threshold question must necessarily be: does applicable law grant the surety a property interest in a fund such as the one before us? *Id.* at p. 136, 83 S.Ct. at pp. 234–235. If he has such an interest the limitations of § 70 of the Bankruptcy Act must necessarily be minor. If he has no such interest then under § 70 the surety would be only another creditor who must take his place along with all other creditors of the debtor.

Specifically, the debtor contractor argues that local security and subrogation statutes speak only in terms of creating a cause of action against a creditor to whom the surety has responded. See esp. Articles 1489 and 1737, C.C.P.R., 31 L.P.R.A. §§ 4130 and 4911. The contractor further argues that Articles 1737 and 1738, C.C.P.R., 31 L.P.R.A. §§ 4911 and 4912, grant him no additional privilege other than recognizing the surety's status as a creditor. Further, the contractor relies strongly on *C. Armstrong e Hijos v. Diaz*, 95 P.R.R. 800 (1968), and *American Surety Co. v. Superior Court*, 97 P.R.R. 440 (1969), for the proposition that no lien is created in favor of laborers and materialmen, or their successors in interest, against the owner of a project for the debts of a contractor.

While we concede that the above cited cases do stand for this principle we fail to see how they enhance the contractor's position over the surety's. In *American Surety Co.*, supra, the surety, as assignee of a subcontractor, filed suit against the owner and contractor of a building project for collection of money due the subcontractor for his labor. The Court found that Article 1489 created a "direct action" in favor of laborers and materialmen. In defining the nature of this action the Court stated:

"This direct nature of the action produces the important effect of deducting the amount claimed by the laborer or materialmen from the claims of other creditors of the contractor, since from the very moment the claim is made to the owner, the latter becomes the debtor of the contractors, laborers and materialmen." *Id.* at p. 444. (Citations omitted).

Under these civil law principles of "direct action" the Court allowed the surety, as assignee of the subcontractor, to recover from the owner. The Court did distinguish this "direct action" from the action granted all creditors to go against the creditors of a debtor, Article 1064 C.C.P.R., 31 L.P.R.A. § 3028. It did not, however, rule on the effect of third party subrogation with respect to materialmen and laborers.[8]

In *Diaz*, supra, materialmen brought suit against the owner and the contractor for collection of sums owed for materials supplied for the project. The construction contract involved herein specified that the owner would retain 5% of each payment to secure against defects in the completion of the project. Contrary to provisions in the contract the owner turned over these funds to the contractor before completion of the project. Because of this the owner raised the defense that the materialmen had no cause against him because he had not retained funds in his possession. However, since there were other funds held by the owner from which the materialmen could

---

6. Generally, section 70 provides that the trustee in bankruptcy shall be vested by operation of law with Title to all property of the bankrupt.

7. The receiver's arguments in his cross Motion follows similar lines.

8. In this suit the real adversary in interest was the Government of Puerto Rico who levied a claim on these same funds for unpaid taxes. The Court held the surety's claim had priority over the Government's tax levy because these funds were for all effects not the property of the contractor. Cf. *United States v. Durham*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960), cited in *Pearlman*, at fn. 11.

recover, the Court found it unnecessary to rule on recovery as to these retainages. The materialman was allowed to recover regardless of the nature of the funds held by the owners.

▪ What these cases stand for is first, that materialmen and laborers have a privileged "direct action" against the owner of a project for services and materials owed to them by the contractor;[9] second, that this privileged status has its limits;[10] and, third, that it is transferable.[11] They definitely do not hold that there cannot exist any beneficial interest in sums retained by the owner.

▪ Once we find that materialmen and laborers are vested with "beneficial interest" as to sums in the hands of the owner owed to the contractor we must, a fortiori, find that the surety by subrogation would stand in the same legal right after having satisfied his contractual debt with respect to the contractor. Payment by the surety assures him full indemnification. Article 1737 C.C.P.R., 31 L.P.R.A. § 4911. "By virtue of such payment the surety is subrogated in all the rights which the creditor had against the debtor." Article 1438, C.C.P.R., 31 L.P.R.A. § 4912. Under Article 1166 C.C.P.R., 31 L.P.R.A. § 3250:

"Subrogation transfers to the subrogated the credits *with the corresponding* rights, either against the debtor or against third persons, be they sureties or holders of mortgages." (emphasis added).

The result of all this is that the privilege vested in these creditors of the contractor would vest by "operation of law" in the surety. See: 12 Manresa, *Comentarios al Código Civil*, pgs. 304–306 (1950 ed.). The surety's interest would be separate and superior to that of the other creditors. See: *United States v. Commonwealth of Pennsylvania Department of Highways*, 349 F.Supp. 1370, 1381–1383 (D.Pa.1972).

Aside from these cases and this approach there is also enough support for concluding that the surety, in his own right, is entitled to said funds. Besides stepping into the shoes of the laborers and materialmen in the above described manner, the surety's right of subrogation may also be viewed from the standpoint of his filling the shoes of the contractor whose debts he has satisfied. See: *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.*, 411 F.2d 843 (C.A.1, 1969). Thirty years before *Pearlman* was decided the Supreme Court of Puerto Rico in *Sobrinos de Ezquiaga v. Heirs of Hatch*, 38 P.R.R. 536 (1928), held that a surety by taking charge and completing a project is subrogated in the rights of the contractor under Articles 1171 and 1178 C.C.P.R., 31 L.P.R.A. §§ 3272, 3279 and is entitled to receive money paid for work done by him.[12] From still a third viewpoint, the surety may be seen as filling the shoes of the owner, whose benefits from the completion of the project, may be unjustly enriched if the surety who assumed completion of a project were precluded from seeking reimbursement.[13] See: *Framingham Trust Co. v. Gould National Batteries, Inc.*, 427 F.2d 856 (C.A.1, 1970). Cf. *American Surety Co.*, supra, at 443.

---

**9.** See also: *A. L. Arsuaga, Inc. v. La Hood Const. Inc.*, 90 P.R.R. 101 (1964); *Christy y Sánchez v. Commonwealth of P. R.*, 84 P.R.R. 226 (1964).

**10.** It is not a materialmen or laborer's lien, *Ferrer v. Alliance Comp. of P. R. Inc.*, 93 P.R.R. 1, (1966); *Jiménez y Salellas, Inc., v. Maryland Casualty Co.*, 92 P.R.R. 200 (1966); and it is only allowable for the amount held by the owner which is due to the contractor. *Montalvo y Comas Electric Corp. v. Commonwealth of P. R.*, 500 P.R.R. 249 (Slip Opinion Sept. 28, 1978), (78 J.T.S. 66).

**11.** Cf. *American Surety Company*, supra. Although an assignment, as was the case in *American Surety*, and a right of subrogation, as

is the case here, are two different concepts, they are sufficiently similar to reach the above conclusion. 8 Manresa, *Comentarios al Código Civil*, pp. 812 -13 (1951 ed.).

**12.** Cf. *American Fire Cas. Co. v. First Nat. Bank of New York*, 411 F.2d 755 (C.A.1, 1969).

**13.** Note the language to an agreement between the contractor, the owner, and the lender: "In the event the Contractor were to be in default

and as a result thereof, the Surety should have to complete the work, the Bank, hereby agrees, and is hereby irrevocably authorized and instructed, to pay any monies which may be due for work from the Special Escrow Account directly to the Surety."

Thus, from any of these three perspectives, completion of the project and payment of laborers and materialmen, grants specific rights to the surety for reimbursement. Federal courts interpreting bankruptcy statutes have acknowledged this superior right to the surety despite ensuing or pending petitions in bankruptcy. See: *In Re: J. V. Gleason Co.*, 452 F.2d 1219 (C.A.8, 1961); *United States v. Com. of Penn.*, supra. See also: *In Re: L. H. Duncan & Sons*, 127 F.2d 640 (C.A.3, 1942); *In Re William P. Bray Co.*, 127 F.Supp. 627 (D.Conn.1954); but see also: *Butler v. Pacific National Insurance Co.*, 375 F.2d 518 (C.A.9, 1967).[14] Therefore, on the undisputed facts before us we can but reach the conclusion that as a matter of law the surety has the superior right to retainages held by the lender under the contracts before us.[15]

For all the above cited reasons Summary Judgment shall be entered DECLARING the superior right of Plaintiff to retainages held by Codefendant, Housing Investment Corporation. No specific amount shall be entered in favor of Plaintiff. Instead this Decision and Order will be understood as clarifying the Bankruptcy Court's Order of June 10, 1976 insofar as it froze the disbursement of retainages. Since the debtor's Petition is still pending final bankruptcy resolution the Judgment shall state that the Bankruptcy Court shall examine the claims of Codefendant Housing Investment, Inc. as to sums disbursed for final completion of the project and set—off any amounts as may be appropriate under the terms of the contracts involved. The counterclaim and cross claim of Defendant, Constructora Maza, are accordingly DISMISSED.

IT IS SO ORDERED.

See: December 14, 1973 Agreement, Plaintiff's Motion for Summary Judgment, February 22, 1979. Exh. E.

14. In *Butler*, supra, the Court in determining whether the surety or the trustee had the superior right to retained funds found that the surety had a priority right but ordered the money turned over to the trustee for distribution to that class of creditors having this priority right.

Though not supportive of our view *Butler* does not exactly hold that our conclusion is wrong.

15. Since it is elementary that a trustee's rights in the debtor's property under § 70 can be no greater than those which belonged to the debtor, see gen.: *Matter of Forester*, 529 F.2d 310 (C.A.9, 1976), our conclusions on the contractor's claims are equally dispositive of the claims of the trustee.