**Samuel D. MAGAVERN, as Executor and Trustee of The Last Will and Testament of Margaret C. Duncan, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ–74–405.**

United States District Court, W. D. New York.

June 8, 1976.

218

Magavern, Magavern, Lowe & Beilewech (Samuel D. Magavern, and Charles B. Draper, Buffalo, N. Y., of counsel), for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Roger P. Williams, Buffalo, N. Y., of counsel), for the Government.

CURTIN, Chief Judge.

This case had its origin in the will of one Margaret C. Duncan, who, when she died in 1965, left the residue of her estate in trust for her husband, her son Thomas W. Doran, and the children and grandchildren of Thomas W. Doran. We are concerned with Thomas W. Doran, the son, who was deficient in his tax payments for various amounts in the years 1965, 1966, 1968, 1969, 1970 and 1971. The Government filed notices of assessment under 26 U.S.C. §§ 6201, 6203 at various times from 1967 to 1972 and, on December 5, 1973, the trustee was served a notice of levy under 26 U.S.C. §§ 6321, 6331 by the Internal Revenue Service. The levy purported to cover "all property and rights to property . . . belonging to" Thomas W. Doran.

On August 23, 1974, the plaintiff-trustee brought suit under 26 U.S.C. § 7426(a)(1), attacking the Government's levy. Presently before the court are the plaintiff's motion for summary judgment in which the plaintiff asks the court to cancel the Government's notice of levy, and the defendant Government's cross-motion for partial summary judgment asking the court to find the tax lien against the trustee valid and that the trustee be ordered to comply with it.

The plaintiff claims that he holds no property or rights to property of Thomas Doran, and therefore that the levy is wrongful. The Government, on the other hand, urges that under the terms of the trust, Mr. Doran has property or rights to property in the trust income and principal, and the trustee, as holder of the property, was lawfully served with the tax lien. Mr. Doran died February 19, 1975. His tax liability is not contested by the parties.

Both sides agree that the starting point for analysis is *Aquilino v. United States,* 363 U.S. 509 [80 S.Ct. 1277, 4 L.Ed.2d 1365] (1960). In that case, involving the question of the priority of a federal tax lien, the Supreme Court stated:

The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law . . . . However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against

the taxpayer's "property" or "rights to property." 363 U.S. at 512–514 [80 S.Ct. at 1280] (citations omitted, footnotes omitted).

■ The plaintiff, prior to instituting this action, commenced an action in Surrogate's Court of Erie County on June 27, 1974, seeking a determination of the question now before this court. The plaintiff claims that the Surrogate's ruling that the trust beneficiaries have no property rights in the trust, and specifically that Thomas W. Doran has no property rights in the trust, is conclusive of the issue in this case. *In re Will of Duncan,* 80 Misc.2d 32, 362 N.Y.S.2d 788, 792 (Sur.Ct. Erie Co. 1974). However, the Supreme Court in *Commissioner v. Bosch,* 387 U.S. 456 [87 S.Ct. 1776, 18 L.Ed.2d 886] (1967), ruled that a federal court is not "conclusively bound by a state trial court adjudication of property rights or characterization of property interests when the United States is not made a party to such proceeding." 387 U.S. at 456–457 [87 S.Ct. at 1778]. The Court indicated that, as in diversity cases, the federal court must look to the state's highest court as the best authority on that state's law and that, in the absence of a ruling by that court, "proper regard" should be given to the decisions of that state's lower courts. 387 U.S. at 465 [87 S.Ct. 1776].

The Government appeared before the Surrogate solely to contest that court's jurisdiction. It did not argue the merits of plaintiff's claim. The Surrogate ruled that he had no jurisdiction over the Government with respect to the tax levy, but that he maintained jurisdiction over the construction of the Duncan will and could decide "whether the trust beneficiaries have any property rights in the trust." *In re Will of Duncan, supra,* 362 N.Y.S.2d, at 790.

The plaintiff argues that the Surrogate's will construction binds the Government since the proceeding was *in rem,* but the cases cited by plaintiff in his brief before the Surrogate and before this court are not clear on this point. If the plaintiff's contention were upheld, then questions of federal tax liability could be routinely and conclusively decided by lower state courts. Such a procedure does not stand up under the guidelines of the *Bosch* case.

■ This court agrees with the Government that the will construction was *ex parte* and not binding on it. Therefore, although not bound by his ruling, we must consider the conclusions of the Surrogate. No other New York cases appear to be directly on point.

The pertinent part of the trust provision, "ARTICLE THIRD", reads:

1. This Trust shall be held and administered for the benefit of the family group consisting of those from time to time living of my husband, MATTHEW DUNCAN, my son, THOMAS W. DORAN, his children and the issue of his children. My Trustee *shall pay over or use,* apply and expend whatever part or all of the new income or principal (even to the point of exhaustion thereof), or both, thereof he shall deem proper or necessary *in order to provide comfortable support, maintenance and/or education* (at any level) *to the individual members of the said family group. My Trustee shall not feel bound,* in making such payments, uses, applications or expenditures, *to observe any rule or precept of equality as between the individual members of said family group.* (Emphasis added).

The Surrogate ruled that since the trust is discretionary, and since the trustee need not distribute the trust income or principal equally among the beneficiaries, "[t]he only interest of Thomas W. Doran and the other beneficiaries of the trust is merely one of expectancy, and the trustee cannot be compelled to transfer to any member any part of the trust property." *In re Will of Duncan, supra,* 362 N.Y.S.2d, at 791. According to the Surrogate,

It is clearly the law that where a trustee in administering the trust is given absolute discretion as to the application of income or principal to one or more of a group of beneficiaries without being bound to observe any rule or precept of equality, that the beneficiaries have no absolute right to receive income from the

trust, their gift being "only of so much as the trustee shall properly determine to apply". *Matter of Connolly*, 71 Misc. 388, 389, 130 N.Y.S. 194, 195 [(Sur.Ct. Kings Co. 1911)]; *Hamilton v. Drogo*, 241 N.Y. 401, 150 N.E. 496 [(1926)]. 362 N.Y.S.2d at 791.

In *Connolly*, the guardian of will legatees asked the court to order the trustee "[to] pay him certain income, in order that he may use it in part to reimburse himself for past expenditures in taking care of his children, and in part to provide for their future care and maintenance." *Matter of Connolly, supra*, 130 N.Y.S. at 195. The Surrogate in that case rejected the guardian's application, ruling that when a trust gives the trustee discretion in determining income distribution, "it is not for either the guardian or the court to interfere with the function of the trustee, *unless* it appear that he is exercising it perversely or unreasonably." 130 N.Y.S. at 195 (emphasis added). The Surrogate also pointed out that the will in that case made no provision for support or maintenance, but only for education.

In *Drogo*, the will provided that the trustee use the trust income "for the maintenance and support or otherwise, for the benefit *of all or any one or more exclusively of the other or others of him* my said son . . . as my . . . trustees in their sole and uncontrolled discretion . . . think fit." *Hamilton v. Drogo, supra*, 241 N.Y., at 403 [150 N.E., at 496] (emphasis added). The crucial word in the terms of this will was "exclusively," and it was the use of this word that gave the trustee the discretion to decide whether or not to pay some trust income or none at all to an individual trust beneficiary. This distinction was pointed out by the New York Court of Appeals in a later case, *Sand v. Beach*, 270 N.Y. 281 [200 N.E. 821] (1936). In *Beach*, the trustee was given discretion to pay the trust income "either direct and in person to my nephew . . . , or for the use and benefit of my said nephew and those dependent upon him, during his lifetime, and in the manner and amounts . . said trustee . . . in his discretion may

deem best . . . ." 270 N.Y., at 283 [200 N.E., at 822].

The New York Court of Appeals ruled in *Beach* that the use of the word "or" gave the trustee the choice of distributing trust income to either the nephew or the nephew and those dependent upon him. It did not, however, give the trustee the choice of not giving any trust income to the nephew at all. The court distinguished *Drogo*, because in *Drogo* the terms of the trust gave the trustee the discretion to distribute trust income to one or more of the beneficiaries, exclusive of the other beneficiaries.

Here, our situation is more similar to *Beach* than to *Drogo*. The trustee, under the Duncan will, "shall pay over or use" the income or principal "he shall deem proper or necessary in order to provide comfortable support, maintenance . . . to the individual members of the said family group." Therefore, although the trustee is not bound by the will to give equal allotments to each beneficiary, he is bound to distribute some trust income to each of the individual beneficiaries for their "comfortable support." Nothing in the will allows the trustee to delete any beneficiary totally.

In the years directly preceding the Government's levy of December 5, 1973, the trustee distributed the following amounts to Thomas W. Doran.

| | |
|---|---|
| 1968 | $ 1,500.00 |
| 1969 | 2,000.00 |
| 1970 | 1,039.61 |
| 1971 | 3,000.00 |
| Jan. 1, '72—Oct. 31, '72 | 2,000.00 |
| Nov. 1, '72—Oct. 31, '73 | 3,500.00 |

Memorandum of Government at 2.

Although the courts will not ordinarily interfere with the discretion of the trustee, this rule is not ironclad. If the trustee fails "to honestly and fairly exercise the discretion vested in [him]," *Collister v. Fassitt*, 163 N.Y. 281, 292 [57 N.E. 490, 494] (1900), then a court will step in, at the beneficiary's behest, and determine the amount due the beneficiary. In *Ireland v. Ireland*, 84 N.Y. 321 (1881), the court interpreted the trust provisions as granting the

trustee discretionary power over the income distribution to the various beneficiaries, but stated that a trustee's discretion can be "controlled" by a court of equity. 84 N.Y. at 328.

█ It appears, then, that even if the trustee is granted discretion over the amount of trust income to be distributed to individual trust beneficiaries, the individual beneficiary of the trust, as long as the trustee is directed to pay some trust income to him, can compel the trustee to exercise his discretion reasonably. To that extent, the beneficiary has a "right to property" under New York law.

A similar situation confronted a federal district court in the Northern District of California in the case of *United States v. Taylor*, 254 F.Supp. 752 (N.D.Cal.1966). The court stated:

> The trust being one fundamentally for support, the taxpayer has a basic beneficial right to receive payments from income to the extent needed for his support. It follows that the government liens have attached to and subsist against that right.

254 F.Supp. at 756.

█ The federal tax lien is pervasive. In referring to the wording of 26 U.S.C. § 6321, the Supreme Court has stated that "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267 [66 S.Ct. 108, 110, 90 L.Ed. 56] (1945). We conclude that under New York State law, the beneficiary had "rights to property" in that he had a right to a reasonable sum under the settlor's instruction for his "maintenance and care," and that therefore the Government's levy is valid. The determination of the actual amount of trust income and/or principal reached by the levy must await trial.

The trustee's motion for summary judgment is denied; the Government's motion for partial summary judgment declaring the tax lien valid is granted.

So ordered.