Samuel D. MAGAVERN, as Executor and Trustee of the Last Will and Testament of Margaret C. Duncan, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 362, Docket 76–6111.

United States Court of Appeals, Second Circuit.

Argued Jan. 5, 1977.

Decided Feb. 24, 1977.

Samuel D. Magavern, Buffalo, N. Y. (Magavern, Magavern, Lowe, Beilewich & Dopkins, Charles B. Draper, Buffalo, N. Y., of counsel), for plaintiff-appellant.

Alfred S. Lombardi, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Ernest J. Brown, Attys., Washington, D. C., on the brief, Richard J. Arcara, U. S. Atty., Buffalo, N. Y., of counsel), for defendant-appellee.

Before MOORE, OAKES and TIMBERS, Circuit Judges.

MOORE, Circuit Judge:

This case arises out of the efforts of the Internal Revenue Service to satisfy an outstanding tax assessment by levying on what it asserts is the taxpayer's interest in a testamentary trust established by his mother. The dollar amount being contested is relatively small, the parties having stipulated that the Government seeks to acquire only approximately $2300. The legal issues confronted, however, are nonetheless significant.

## I.

Thomas W. Doran ("Doran"), the taxpayer herein, was deficient in his federal tax payments for various amounts during 1965, 1966 and 1968–1971, resulting in the assessment against him of federal taxes and interest in the aggregate amount of $112,-753.51. On November 7, 1974 a total of $108,303.96, plus penalties and interest, remained unpaid.[1] As might be expected, the Government began to seek assets against which it could levy to satisfy this large unpaid assessment.

One asset against which the Government proceeded is the trust at issue here. Margaret C. Duncan, Doran's mother, had died in 1965 leaving the residue of her estate in trust for her husband, her son, Doran, and the children and grandchildren of Doran. In each of the years from 1968 to 1973, Doran had received small monetary amounts from the trust.[2] On December 5, 1973, the Government served a notice of levy under §§ 6321 and 6331 of the Internal

---

1. The breakdown of this amount was as follows:

| Period | Type of Tax | Date Assessed | Unpaid Balance |
|---|---|---|---|
| 1965 | Income | 10/2/72 | $ 1,182.98 |
| 1966 | Income | 5/19/67 | 4,804.48 |
| 1969 | Income | 6/5/70 | 6,809.56 |
| 1970 | Income | 7/31/71 | 248.77 |
| 1965 (1Q & 2Q) | W/H & FICA | 12/1/72 | 1,441.82 |
| 1968 (2Q–4Q) | W/H & FICA | 11/16/72 | 48,857.67 |
| 1965–1971 | W/H & FICA | 12/1/72 | 44,958.68 |
| | | | $108,303.96 |

2. Payments were made to Doran as follows:

| Year | Amount of Distribution |
|---|---|
| 1968 | $1,500.00 |
| 1969 | 2,000.00 |
| 1970 | 1,039.61 |
| 1971 | 3,000.00 |
| 1/1/72–10/31/72 | 2,000.00 |
| 11/1/72–10/31/73 | 3,500.00 |

The Trustee had not paid Doran any trust proceeds from the date of the levy until Doran's death on February 19, 1975. The amount here in issue, stipulated by the parties to be $2,305.50, is thus the amount allegedly due

Revenue Code ("Code"), 26 U.S.C. §§ 6321 and 6331, on the trustee of the trust, appellant herein, Samuel D. Magavern. The levy purported to cover "all property and rights to property" belonging to Doran. However, the trustee refused to honor the levy on the ground that under the terms of the trust, Doran had no rights in the trust property.

On June 27, 1974, the trustee commenced a proceeding in the Surrogate's Court of Erie County, New York, seeking to determine the validity and effect, if any, of the notice of levy on Doran's beneficial interest in the trust. The Government appeared specially in the Surrogate's Court, arguing only that the Surrogate had no jurisdiction to affect the levy. On December 27, 1974 the Surrogate filed a decision holding that he did not have jurisdiction to "vacate, annul, cancel or discharge" the levy, but that pursuant to his continuing jurisdiction over Margaret Duncan's Last Will and Testament he could decide whether or not the trust beneficiaries had any property rights in the trust. Accordingly, he proceeded to hold that by the trust's terms the trustee had complete and sole discretion to withhold the income from any individual member of the family group, and that as a consequence Doran had no property rights in the trust. *In re Will of Duncan*, 80 Misc.2d 32, 362 N.Y.S.2d 788 (Surr.Ct.Erie Co., 1974).

On August 23, 1974, while the Surrogate's Court proceeding was still pending, the trustee commenced the instant action in the Western District of New York seeking, pursuant to § 7426(a) of the Code, 26 U.S.C. § 7426(a), to enjoin enforcement of the levy. Upon announcement of the Surrogate's decision, the trustee moved for summary judgment on the basis of the Surrogate's finding that Doran had no right to property in the trust, and the Government cross-moved for enforcement of the levy. The district court on June 8, 1976, rendered its decision, reported in 415 F.Supp. 217. It reasoned that under New York law the trust instrument by mandatory language requires the trustee to pay at least some income to each of the beneficiaries, including Doran, so that Doran had a right to the trust property which was subject to levy. Moreover, the district court held that the contrary decision of the Surrogate's Court, though it must be afforded proper regard, was not binding on a federal court. Judgment was entered for the Government in the stipulated amount, and the trustee timely brought this appeal.

II.

The Internal Revenue Code contains several sections dealing with the use of federal tax liens to collect unpaid taxes. *See* Plumb and Wright, *Federal Tax Liens* (2d ed. 1967). Section 6321[3] provides that a lien shall attach in favor of the United States on all property and rights to property of any person who, after demand, neglects or refuses to pay federal taxes for which he liable. Section 6332[4] provides that any person in possession of property or rights subject to levy must surrender them

Doran for the period of December 5, 1973 (the date of the levy) to the date of his death.

3. Section 6321, 26 U.S.C. § 6321, reads as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

4. Section 6332, 26 U.S.C. § 6332, reads as follows:

"(a) *Requirement.*—Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process."

upon demand of the Secretary or his delegate.

It is long-established, and conceded by both parties to this case, that in asserting its federal tax lien, the Government must look to state law for a determination of what legal rights and interests, if any, comprise "property and rights to property" to be attached. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). As the Supreme Court stated in *Aquilino*:

> "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . sought to be reached by the statute.' *Morgan v. Commissioner of Internal Revenue,* 309 U.S. 78, 82 [60 S.Ct. 424, 84 L.Ed. 585]." 363 U.S. at 512–13, 80 S.Ct. at 1280 (footnote omitted).

Both parties here agree that the question before us is thus whether or not under New York law Doran had a property interest or right to property in the trust established by his mother.

 Unfortunately, the parties' agreement as to the authority of New York law does not insure accord as to what that applicable law is, or how the federal courts should discover it. The trustee strongly urges upon us that the decision of the Surrogate's Court is binding on the federal courts. He suggests that under New York law the Surrogate's Court, the court which originally probated Mrs. Duncan's will, has continuing, exclusive jurisdiction over her estate, including construction of her will. He concludes that the Surrogate's interpretation of the trust instrument must be considered an *in rem* judgment binding for all purposes, in effect prohibiting any varying interpretations of the language of the will by federal courts. ·

But the Supreme Court has conclusively rebutted the trustee's argument. In *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Court decided two cases concerned with the effect a federal court should give to a decision by a lower state court. In *Bosch,* the state court holding concerned the validity of a decedent's release of a power of appointment over a New York trust. The taxpayer had filed a petition in the Supreme Court of New York to obtain a decision on the validity of the release, which if declared invalid could have qualified the corpus of the trust for the federal tax marital deduction, 26 U.S.C. § 2056. The state court held the release a nullity and the United States Tax Court looked on that decision as binding. A divided panel of this court affirmed, 363 F.2d 1009 (1966), but the Supreme Court reversed. The Court explained that a lower state court decision was a significant factor for a federal court in ascertaining state law, but federal tribunals should not consider lower state court decisions binding where the highest state court has not spoken on the point. As Mr. Justice Clark stated, speaking for the Court:

> "[W]hen the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling. This is but an application of the rule of *Erie R. Co. v. Tompkins* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)], where state law as announced by the highest court of the State is to be followed. This is not a diversity case but the same principle may be applied for the same reasons, *viz.,* the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law." 387 U.S. at 465, 87 S.Ct. at 1782.

The companion case decided in *Bosch* further confirms the point. The Supreme

Court there affirmed the opinion of this court in *Second National Bank v. United States,* 351 F.2d 489 (1965), where this court had expressly upheld a federal district court's finding that "decrees of the Connecticut Probate Court . . . under no circumstances can be construed as binding and conclusive upon a federal court in construing and applying the federal revenue laws." 351 F.2d at 494, *aff'g in part* 222 F.Supp. 446, 457 (D.Conn.1963).

The trustee tries to avoid the consequences of the holdings in *Bosch* by suggesting that the instant case is distinguishable because here the Government appeared in the Surrogate's Court. But the Government only appeared specially, solely to contest that court's jurisdiction. It did not in any way address the merits of the trustee's claim and did not become a party to the proceedings. Indeed, the Surrogate recognized the limited purpose of the Government's appearance in ruling that he had no jurisdiction to affect the tax levy. 80 Misc.2d at 33–34, 362 N.Y.S.2d at 790. We are bound by the reasoning in *Bosch,* and we conclude that the decision of the Surrogate that Doran had no property rights in the trust was not binding on the district court.

▬ *Bosch* also provides guidance for a federal court faced, as was the district court, with a state law question on which the highest state court has not yet ruled. The directive of the Supreme Court is that

"[i]f there be no decision by [the highest state] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court." 387 U.S. at 465, 87 S.Ct. at 1783.

The district court, a decision by the highest court of New York on the issue before it being lacking, was thus required to sit "as a state court" to decide the case as might a state tribunal, giving proper consideration to the ruling of the Surrogate's Court. Though the question is not without some doubt, we feel that the district court properly decided the merits here.

▬ The relevant part of Mrs. Duncan's trust provision reads as follows:

"ARTICLE THIRD:

\* \* \* \* \* \*

1. ˙ This Trust shall be held and administered for the benefit of the family group consisting of those from time to time living of my husband, MATTHEW DUNCAN, my son, THOMAS W. DORAN, his children and the issue of his children. My Trustee shall pay over or use, apply and expend whatever part or all of the net income or principal (even to the point of exhaustion thereof), or both, thereof he shall deem proper or necessary in order to provide comfortable support, maintenance and/or education (at any level) to the individual members of the said family group. My Trustee shall not feel bound, in making such payments, uses, applications or expenditures, to observe any rule or precept of equality as between the individual members of said family group."

While the meaning of these phrases is far from clear, the first sentence sets out in mandatory terms the trustee's duty to pay over: he *"shall pay . . . whatever part or all of the net income or principal . . . to the individual members* of the said family group" (emphasis added). The plain meaning of this primary sentence is to direct some payment to *each* beneficiary. The following sentence grants the trustee discretion to divide *such payments* unequally among the beneficiaries, but it does not give him the authority to deny a particular beneficiary anything at all. The trustee's discretion is not to determine who gets something, but rather to decide how much each is to be given. To interpret otherwise would allow the subordinate sentence, designed only to explain the permissible relativity of the payments, to swallow entirely the mandatory directive language.

The New York Court of Appeals has on only two occasions interpreted trust language at all similar to that presented here. The trustee relies heavily upon *Hamilton v.*

*Drogo,* 241 N.Y. 401, 150 N.E. 496 (1926), in which the Court of Appeals held that a beneficiary of a testamentary trust did not have any right to income which a creditor could attach. But the will in that case expressly granted to the trustee uncontrolled discretion to use the trust income "for the maintenance and support or otherwise, for the benefit of *all or any one or more exclusively of the other or others of him* my said son" (emphasis added).

The Court of Appeals stressed the importance of this express instruction in discussing the *Drogo* case in *Sand v. Beach,* 270 N.Y. 281, 284–85, 200 N.E. 821, 822 (1936). In *Sand,* the trustee was directed to pay the trust income "either direct and in person to my nephew . . . or for the use and benefit of my said nephew and those dependent upon him. . . ." The court reasoned that this directive gave the trustee discretion to distribute income either to the nephew directly or for the benefit of the nephew and his dependents. But absent clear language giving the trustee the choice of withholding all income from the nephew, he could not choose to deny the nephew any income at all.

As the district court found after a reasoned consideration of both these cases, the facts in the instant case are more akin to *Sand* than they are to *Drogo.* The trustee under the Duncan will "shall pay over" what amounts he deems proper "to the individual members of the . . . group." The trustee is bound to distribute some trust income to each of the beneficiaries for their "comfortable support, maintenance and/or education." Nothing in the will, either expressly or by reasonable implication, allows an entire deletion of any beneficiary. Nor is the trustee's own action in making annual payments to Doran from 1968 to October 31, 1973 [5] to be ignored. Obviously Doran was considered one of the group regarded as entitled to some distribution.

New York law clearly establishes, moreover, that an aggrieved trust beneficiary can enforce his right to trust property or income against a trustee who refuses to exercise his discretion as directed in the trust instrument. *Matter of Rosenberg,* 269 N.Y. 247, 199 N.E. 206 (1935); *Collister v. Fassitt,* 163 N.Y. 281, 57 N.E. 490 (1900); *Ireland v. Ireland,* 84 N.Y. 321 (1881).

We also note, though the trustee has not contended otherwise, that the New York Court of Appeals has included taxes within the definition of the term "support" in a case involving enforcement of a federal tax lien against a beneficiary's rights in a spendthrift trust. *Matter of Rosenberg, supra.*

The district court, after proper consideration of relevant New York cases, found that Thomas W. Doran had a right to property in his mother's trust under New York law, a right which can be attached pursuant to the federal tax lien. We agree with that decision.

Affirmed.

OAKES, Circuit Judge (dissenting):

I agree with the majority that the decision of the Surrogate's Court in this case is not binding on the federal courts, but I disagree with its conclusion that the district court, "sitting as a state court," *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), correctly construed the trust instrument in light of applicable New York law. I would therefore reverse.

The majority concludes, as did the court below, that "[t]he trustee is bound to distribute *some* trust income to each of the beneficiaries . . . ." *Ante* at 802 (emphasis added); *see* 415 F.Supp. at 220. This question is critical because, if the trustee were held not to be so bound, that is, if he could withhold payment from any beneficiary at his discretion, then Mr. Doran, the taxpayer beneficiary here, would concededly have no state property right in the trust

---

**5.** It is significant that annual payments ceased only after the levying of the Government's tax lien on December 5, 1973.

income. Without such a right, there is nothing to which the Government tax lien may attach. *See* 26 U.S.C. §§ 6321, 6331; *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Significantly, in reaching their respective conclusions, neither the majority nor the court below indicates *how much* trust income the trustee must distribute to any particular beneficiary, and indeed no one could do so, since the decision rests entirely with the trustee under the terms of the trust instrument. The key sentence directs the trustee to "pay . . . *whatever* part or all of the net income or principal . . . *he shall deem proper or necessary* . . . to the individual members of the said family group" (emphasis added).

If this court and the court below were faced with the problem of determining the amount of money to which Mr. Doran, the taxpayer, had a claim—and thus the amount the Government could take via its tax lien—I believe a different result would be reached from that the parties by stipulation in effect reached here, agreeing as they have upon the amount the trustee will pay to the Government if the Government succeeds on the legal issues. The stipulation, it can be seen, permits the majority opinion to avoid facing the fact that the amount due from the trustee to any particular beneficiary is utterly undefinable and thus to avoid wrestling with the really vital question whether, for example, the payment of one dollar to Mr. Doran, if that sum were deemed "proper or necessary" by the trustee, would satisfy the trustee's obligation to convey, as the majority says, "some" funds from the trust to each beneficiary.

If it conceded—and nothing I can find in the majority opinion is to the contrary—that a good faith payment of one dollar would satisfy the trustee's obligation to Mr. Doran, I am puzzled how a good faith "payment" of zero can be held not to satisfy that obligation. The difference between zero and one dollar is surely of no consequence either to Mr. Doran or the Government, and many of the beneficiaries of the trust here involved, including Mr. Doran

himself for years prior to 1968, have accepted the trustee's failure to give them any payments for several years without, so far as the record indicates, asking a court to compel him to give them "some" of the trust income. The trust instrument on its face certainly seems to give the trustee the option of deeming zero to be the "proper or necessary" level of funding for any particular beneficiary.

The construction suggested by the words of the instrument and by the inability of anyone to specify what is owed Mr. Doran is that this trust is what has been called a "blended trust." G. G. Bogert & G. T. Bogert, *The Law of Trusts and Trustees* § 230 (2d ed. 1965). According to the *Restatement (Second) of Trusts* § 161 (1959) [hereinafter cited as *Restatement*]:

> If a trust is created for a group of persons and the interest of one member of the group is inseparable from the interests of the others, he cannot transfer his interest and his creditors cannot reach it.

Courts in the twentieth century have apparently always followed the *Restatement* view that a creditor cannot reach interests of this sort, even in cases where, as the majority construes the trust here, the trustee has "no right . . . totally to exclude any one beneficiary from benefits . . . ." G. G. Bogert & G. T. Bogert, *supra,* § 230, at 731; *see* A. W. Scott, *The Law of Trusts* § 155, at 1184 (3d ed. 1967) ("Where a trust is created for the benefit of a person and the members of his family, . . . [e]ven if he is entitled to receive part of the income from the trust or to have it applied to his use, his interest may be so inseparable from that of the members of his family that it cannot be assigned and his creditors cannot reach it.") *See also id.* § 161.

The trust here, moreover, is one for "support, maintenance and/or education," with regard to which a beneficiary has no right to compel payment by the trustee, *see In re Martin's Will,* 269 N.Y. 305, 312–13, 199 N.E. 491, 494 (1936); *In re Cuff's Will,* 118 N.Y.S.2d 619, 624 (Sur.Ct.1953); *Restatement* § 128, Comment e, and creditors can-

not reach the beneficiary's interest, *see Ellis v. Chapman,* 165 App.Div. 79, 150 N.Y.S. 673 (1914); *Restatement* § 154. *See also Restatement* § 182, Comment c. While the claim of the Government for taxes might be enforceable against the interest of a sole beneficiary of a trust for support, *see Restatement* § 157(d); *cf. In re Rosenberg,* 269 N.Y. 247, 199 N.E. 206 (1935) (federal tax lien enforceable against beneficiary's interest in spendthrift trust), *cert. denied,* 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392 (1936), this rule does not apply when, as here, there are several beneficiaries with inseparable interests, *see Herzog v. Commissioner of Internal Revenue,* 116 F.2d 591, 594 (2d Cir. 1941) (A. Hand, J.).

The problem of determining what amount is due Mr. Doran illustrates the soundness of the well-settled New York rule that the courts will not interfere on behalf of a creditor of a beneficiary with the exercise of the discretion vested in the trustee. *Sand v. Beach,* 270 N.Y. 281, 284, 200 N.E. 821, 822 (1936); *Hamilton v. Drogo,* 241 N.Y. 401, 404, 150 N.E. 496, 497 (1926); 26 Colum.L.Rev. 776, 776 (1926); *see Restatement* § 155(1). In the one case relied on in the majority and district court opinions for the conclusion that "some" income must be paid out here, *Sand v. Beach, supra,* there was no interference with the trustee's discretion because the judgment debtor had a right "to require payment to him of the *entire* net income of the trust fund," either directly or through "its application for his use and benefit." 270 N.Y. at 286, 200 N.E. at 823 (emphasis added). A case in which the entire trust income must be paid to one beneficiary is manifestly different from the instant case, in which the most the majority can say is that "some" unspecified amount of trust income is due each of several beneficiaries. In the former or *Sand v. Beach* situation, it makes sense to require that the defined sum owed to a single, specific beneficiary be paid to his creditor. Here, where the trustee has virtually complete discretion to allocate funds among several beneficiaries, it makes no sense to impose a similar requirement, since the other beneficiaries, in favor of whom the trustee might otherwise exercise his discretion, will be the losers—the last result a settlor would wish.

The result reached by the majority thus violates the New York rule against interfering with a trustee's discretion and is not supported by the principal case the majority relies upon. The practical result it seems to countenance, moreover, by which a one dollar payment would be sufficient but a zero "payment" would not, cannot be seriously intended by my brothers in the majority, who concededly are spared having to face the question by a stipulation that may have made this case appear simpler than it is, but that should not control the legal result reached. I would reverse the judgment.