T.C. Memo. 2003-290

UNITED STATES TAX COURT

AMY H. O'BRIEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9958-02L.          Filed October 14, 2003.

    P filed a petition for judicial review pursuant to
secs. 6320 and 6330, I.R.C., in response to a
determination by R to leave in place a filed notice of
Federal tax lien.

    <u>Held</u>:  Because the record does not establish an
abuse of discretion by R in rejecting P's offer in
compromise, R's determination to proceed with
collection action is sustained.


<u>Ansel B. Chaplin</u>, for petitioner.

<u>Nina P. Ching</u>, for respondent.

MEMORANDUM OPINION

WHERRY, Judge:  This case arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1] The issue for decision is whether respondent may proceed with collection of tax liabilities for years 1995 through 1999 as so determined.

## Background

This case was submitted fully stipulated pursuant to Rule 122.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.[2]

Petitioner is an artist who supported herself during the 1995 through 1999 tax years by taking odd jobs as an artist's model.  She was born on May 21, 1951, and has, at all relevant times, been single with no dependents.

On July 7, 1999, petitioner filed late Federal income tax returns for 1995, 1996, and 1997 showing balances due.  No payments were remitted with the returns.  Respondent assessed the

---

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent objected to certain stipulations on the grounds of relevancy and materiality.  To the extent we have included information from such stipulations to provide context, we deem respondent's objections moot in light of our opinion and the resolution therein.

reported tax liabilities, as well as delinquency additions to tax and interest, for 1995, 1996, and 1997, and sent corresponding notices of balance due, on August 23, 1999, September 6, 1999, and August 9, 1999, respectively.  Similarly, on October 5, 1999, petitioner filed a late 1998 income tax return showing a balance due, which was not accompanied by any payment.  The 1998 tax liability, additions to tax, and accrued interest were assessed by respondent on November 15, 1999, and a notice of balance due was sent.

For the 1999 taxable year, petitioner filed a timely return showing an overpayment and claiming an earned income credit. Respondent assessed the 1999 tax liability on February 28, 2000, and transferred an overpayment credit to 1995.  Thereafter, on August 7, 2000, respondent made additional assessments to petitioner's 1999 account, and sent a notice of balance due, for tax, additions to tax, and interest resulting from certain uncontested adjustments.

After filing her 1995 through 1998 returns, petitioner on October 26, 1999, created the "Amy H. O'Brien 1999 Irrevocable Trust".  The trust instrument designated a third party as trustee and established a support trust for petitioner's benefit. Specifically, the trust instrument's "THIRD" term and condition provided as follows with regard to distributions:

> During my lifetime, the Trustee shall pay the net
> income from the trust property at least quarter-

annually to me or for my benefit.  The Trustee shall also pay to me or apply for my benefit so much of the principal of the trust property as she may determine in her sole discretion to be necessary or desirable for my health, welfare, maintenance and support.  In so doing, she should be guided by the fact that I have no spouse or other comparably significant object of my affection, and will leave no descendants or collateral descendants for whom the principal should be preserved, if possible.

The trust also contained a spendthrift provision as its "SEVENTH" term and condition.  At petitioner's death, the trustee was directed to distribute remaining principal and undistributed income to a friend of petitioner's, if then living, or to the friend's descendants.

On the same October 26, 1999, date, petitioner executed a quitclaim deed transferring to the trust for nominal consideration a single-family residence located on Cape Cod, Massachusetts.  Petitioner had inherited the home from her parents on July 28, 1986.  At the time petitioner transferred the property, the residence did not enjoy clear marketable title on account of an outstanding 25-percent interest that had never been obtained by the family members who were her predecessors in title.  After transfer of the property, petitioner owned no other significant assets.  The home generated rental income of approximately $600 per month, which petitioner admittedly failed to report on her 1995 through 1999 returns.

In December of 1999, the trust entered into an agreement to sell the residence.  Petitioner's lawyer had been able to

negotiate a purchase-and-sale agreement that permitted the downpayment to be used to clear title through a judicial proceeding. The sale closed, and the trust conveyed the property on February 7, 2001, for a purchase price of $290,000, which netted the trust approximately $235,000 after payment of expenses approximating $55,000 to obtain marketable title. The trust now consists entirely of liquid assets.

On November 9, 2000, respondent filed a notice of Federal tax lien with the Register's Office of New York County, New York, listing petitioner's income tax liabilities for the 1995 through 1999 years. The lien reflected a total unpaid balance of $12,587.62 and was recorded on November 17, 2000.

On November 15, 2000, respondent mailed to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 regarding the just-described lien. Petitioner returned to respondent a completed and signed Form 12153, Request for a Collection Due Process Hearing, with the following explanation of her disagreement:

> It is just impossible for me to pay this amount at this
> time. I can pay up to $100.00 per month beginning in
> January '01. I have one full-time job which pays me
> between $300-$400 per week. After rent + utilities +
> expenses, I can agree to begin paying $100.00 per
> month.

Thereafter, by a letter dated February 28, 2001, respondent rejected the installment plan as stated on the Form 12153. The proposal was rejected because petitioner had defaulted on a

previous installment plan, because information submitted by petitioner showed monthly expenses in excess of income, and because the suggested monthly payments would be insufficient to pay her liabilities within the statute of limitations for collection. After petitioner received this letter, her representative apparently contacted respondent by telephone and discussed possible use of an offer in compromise. Respondent then sent a letter dated May 1, 2001, confirming the telephone conversation and requesting completion of the enclosed Form 656, Offer in Compromise, and Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Respondent received the Form 656 and Form 433-A submitted by petitioner on September 4, 2001. The Form 656 asked petitioner to select as the reason for the offer either doubt as to liability, doubt as to collectibility, or effective tax administration. Petitioner checked effective tax administration, which the form explained as meaning "I owe this amount and have sufficient assets to pay the full amount, but due to my exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair or inequitable." Petitioner proposed to pay a total of $2,400 by remitting $240 for the first month and $180 per month for each of the next 12 months. The Form 656 indicated that the source of the funds would be the "Amy

H. O'Brien 1999 Irrevocable Trust account at Fidelity
Investments".

On September 28, 2001, respondent sent a letter rejecting
petitioner's offer in compromise.  The letter explained that,
because the tax liabilities of approximately $13,000 could be
collected from the at least $175,000 remaining in the body of the
trust, the offer of $2,400 was not acceptable "due to the fact
that the taxpayer has the means to satisfy the entire debt at
this time."

Petitioner submitted additional information supporting her
offer in compromise on October 4, 2001.  Specifically, she
provided bank statements for the period of May 18 to August 19,
2001, a renewal lease for her apartment, a telephone bill, and a
utility bill.  Then, in a letter dated October 10, 2001,
petitioner requested "further review" of respondent's decision to
reject her offer, on grounds that respondent failed to address
"mitigating factors" weighing in petitioner's favor.  In
response, respondent sent a letter reiterating the reasons for
the rejection.  By a final letter dated October 18, 2001,
petitioner's representative continued to argue for acceptance of
her offer.

On May 9, 2002, respondent issued to petitioner the Notice
of Determination Concerning Collection Action(s) Under Section
6320 and/or 6330 sustaining use of the lien as an appropriate

collection action. The notice, consistent with the earlier correspondence, was premised primarily on the inadequacy of collection alternatives in light of petitioner's ability to pay her tax liabilities in full from the assets of the trust. Petitioner's petition challenging this notice was filed with the Tax Court on June 12, 2002, and reflected an address in New York, New York.

## Discussion

### I. Collection Actions--General Rules

Section 6321 imposes a lien in favor of the United States upon all property and rights to property of a taxpayer where there exists a failure to pay any tax liability after demand for payment. The lien generally arises at the time assessment is made. Sec. 6322. Section 6323, however, provides that such lien shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until the Secretary files a notice of lien with the appropriate public officials. Section 6320 then sets forth procedures applicable to afford protections for taxpayers in lien situations. Section 6320(a)(1) establishes the requirement that the Secretary notify in writing the person described in section 6321 of the filing of a notice of lien under section 6323. This notice required by section 6320 must be sent not more than 5 business days after the notice of tax lien is filed and must advise the taxpayer of the

opportunity for administrative review of the matter in the form of a hearing before the Internal Revenue Service Office of Appeals.  Sec. 6320(a)(2) and (3).  Section 6320(b) and (c) grants a taxpayer, who so requests, the right to a fair hearing before an impartial Appeals officer, generally to be conducted in accordance with the procedures described in section 6330(c), (d), and (e).

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
>> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
>> (2) Issues at hearing.--
>
>>> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
>>>> (i) appropriate spousal defenses;
>
>>>> (ii) challenges to the appropriateness of collection actions; and
>
>>>> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
>>> (B) Underlying liability.--The person may also raise at the hearing challenges to

> the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court or a U.S. District Court. In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

> where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

II. Contentions of the Parties

The parties have stipulated that "petitioner's only argument in this case is that respondent abused his discretion by failing to accept her offer in compromise." Accordingly, petitioner's underlying tax liabilities for the 1995 through 1999 years are not at issue in the instant proceeding.

In arguing that rejection of her offer was an abuse of discretion, petitioner on brief "takes the position that she cannot afford to pay her liabilities in full", "agrees that the respondent has the naked power to reach and apply the Trust assets, but contends that it would be grossly unfair to do so."

In other words and as summarized by petitioner, although "the O'Brien Trust assets <u>can</u> be reached to satisfy the 1995-1999 tax liability", "it was an abuse of discretion to ignore her over-all financial situation and reject her offer-in-compromise which acknowledged an indebtedness, but sought recognition that to deplete her trust would not be in the public interest."

Conversely, respondent asserts that standards reflected in section 7122 and regulations promulgated thereunder regarding evaluation of offers in compromise support respondent's rejection of petitioner's offer. In this connection and relying on principles set forth in caselaw and in Rev. Rul. 55-210, 1955-1 C.B. 544, respondent maintains that petitioner's interest in the trust is properly reachable by Federal tax lien and that petitioner therefore has sufficient assets to pay her liabilities in full. Respondent further contends that petitioner has failed to establish economic hardship or to present compelling public policy or equity considerations, as described in the applicable regulations discussed below, that would show any abuse of discretion in respondent's actions against these trust assets.

III. <u>Analysis</u>

Section 7122(a), as pertinent here, authorizes the Secretary to compromise any civil case arising under the internal revenue laws. Section 7122(c)(1) then addresses standards for evaluation of offers, as follows: "The Secretary shall prescribe guidelines

for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute."  In accordance with this directive, section 301.7122-1T(b), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39024 (July 21, 1999)[3], sets forth three grounds for compromise of a liability:  (1) Doubt as to liability, (2) doubt as to collectibility, or (3) promotion of effective tax administration.  Section 301.7122-1T(b)(4), Temporary Proced. & Admin. Regs., supra, the provision relevant here, reads as follows:

> (4) Promote effective tax administration.  If there are no grounds for compromise under paragraphs (b)(2) and (3) of this temporary regulation, a compromise may be entered into to promote effective tax administration when--
>
> (i) Collection of the full liability will create economic hardship within the meaning of § 301.6343-1; or
>
> (ii) Regardless of the taxpayer's financial circumstances, exceptional circumstances exist such

_____

[3] By their terms, the temporary regulations apply to offers in compromise submitted on or after July 21, 1999, through July 19, 2002.  Sec. 301.7122-1T(j), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39027 (July 21, 1999).  The temporary regulations thus were effective throughout the period during which petitioner's offer was under consideration by respondent.  Final regulations, which do not differ materially in substance, were subsequently issued and are applicable for offers pending on or submitted on or after July 18, 2002.  Sec. 301.7122-1, Proced. & Admin. Regs.  Temporary regulations are entitled to the same weight and binding effect as final regulations.  Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996).

that collection of the full liability will be detrimental to voluntary compliance by taxpayers; and

(iii) Compromise of the liability will not undermine compliance by taxpayers with the tax laws.

(iv) <u>Special rules for evaluating offers to promote effective tax administration</u>.--(A) The determination to accept or reject an offer to compromise made on the ground that acceptance would promote effective tax administration within the meaning of this section will be based upon consideration of all the facts and circumstances, including the taxpayer's record of overall compliance with the tax laws.

(B) Factors supporting (but not conclusive of) a determination of economic hardship under paragraph (b)(4)(i) include--

(<u>1</u>) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability and it is reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition;

(<u>2</u>) Although taxpayer has certain assets, liquidation of those assets to pay outstanding tax liabilities would render the taxpayer unable to meet basic living expenses; and

(<u>3</u>) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and disposition by seizure or sale of the assets would have sufficient adverse consequences such that enforced collection is unlikely.

(C) Factors supporting (but not conclusive of) a determination that compromise would not undermine compliance by taxpayers with the tax laws include--

(<u>1</u>) Taxpayer does not have a history of noncompliance with the filing and payment requirements of the Internal Revenue Code;

(<u>2</u>) Taxpayer has not taken deliberate actions to avoid the payment of taxes; and

(3) Taxpayer has not encouraged others to refuse to comply with the tax laws.

For purposes of appraising respondent's exercise of discretion, we consider petitioner's circumstances, as presented to the Appeals Office, in light of the foregoing standards. The regulations emphasize economic hardship, and petitioner throughout these proceedings has generally asserted her lack of ability to pay. Economic hardship is defined as an inability to meet reasonable basic living expenses. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

Petitioner in her Form 433-A alleged an estimated monthly income of $2,000, comprising $1,500 in earnings as an artist's model and $500 in distributions from the trust. The Form 433-A further showed estimated monthly expenses of $1,975.50, including $250 for food, clothing, and miscellaneous; $1,016.50 for housing and utilities; $62 for transportation; $40 for health care; $557 for taxes; and $50 for other expenses. Yet petitioner submitted bank statements reflecting miscellaneous expenditures and cash withdrawals of at least $1,500 to $1,800 per month, which amounts apparently exclude rental expenses. A number of the outlays are to establishments that provide other than "basic necessities", such as Castle Wine & Spirits, Sea Grape Wine & Spirits, Ryan's Irish Pub, Rockefeller Center Cafe, Borders Books & Music, Tower Records, World of Video, Triton Video, Radio Shack, The Gap, and Speedo Authentic Fitness. The discrepancy between the seeming

amount of discretionary expenditures shown by the Form 433-A and the bank statements is unexplained and leaves the record ambiguous as regards petitioner's basic living expenses or her ability to meet them.

Similarly, the record contains no evidence of any illness, medical condition, or disability that would render petitioner incapable of earning a living or would exhaust all of her financial resources. Although on brief petitioner references uninsured medical expenses incurred in 2002, such uncorroborated information never raised in the administrative proceeding falls short of revealing any abuse of discretion. See Magana v. Commissioner, 118 T.C. 488, 493 (2002) (considering "only arguments, issues, and other matters that were raised at the collection hearing or otherwise brought to the attention of the Appeals Office").

Turning to petitioner's assets, we note at the outset that no dispute between the parties exists as to whether the trust is reachable for collection of petitioner's Federal tax liabilities. Further, this view would appear to accord with relevant authorities. State law determines the existence of property rights to which Federal tax consequences, such as a tax lien, may then attach. Aquilino v. United States, 363 U.S. 509, 512-514 (1960); Magavern v. United States, 550 F.2d 797, 800 (2d Cir. 1977). As this Court has recognized, the court in In re

Rosenberg's Will, 199 N.E. 206 (N.Y. 1935), cert. denied 298 U.S. 669 (1936), "held that the interest of a beneficiary under a New York spendthrift trust may be reached by the United States under an income tax lien". Mahler v. Commissioner, T.C. Memo. 1987-64.

The Court of Appeals for the Second Circuit, to which appeal in the instant case would normally lie, has indicated that where, under State law, a beneficiary can force a trustee to act, as in a support trust, the beneficiary has an interest in property subject to Federal tax lien. Magavern v. United States, supra at 802. In this context, the Court of Appeals has also explained that "New York law clearly establishes * * * that an aggrieved trust beneficiary can enforce his right to trust property or income against a trustee who refuses to exercise his discretion as directed in the trust instrument". Id. (citing In re Rosenberg's Will, supra). Further, "the New York Court of Appeals has included taxes within the definition of the term 'support' in a case involving enforcement of a federal tax lien against a beneficiary's rights in a spendthrift trust." Id. (citing In re Rosenberg's Will, supra); see also United States v. Murray, 217 F.3d 59, 65 & n.5 (1st Cir. 2000); United States v. Rye, 550 F.2d 682, 685 (1st Cir. 1977); Rev. Rul. 55-210, 1955-1 C.B. 544.

At the time petitioner's offer in compromise was under consideration, the trust corpus was approximately $175,000. Her

tax debt approximated $13,000.  The evidence fails to establish that collection against less than one-thirteenth of the asset's value would leave petitioner unable to meet basic living costs in the immediately foreseeable future.  Needs over the longer term would be no more than rampant speculation.  Hence, the totality of the financial information in the record does not show that respondent committed an abuse of discretion in concluding that the disputed lien would not create economic hardship.

In addition, while the regulations also provide that collection that will prove detrimental to voluntary compliance may be inappropriate regardless of financial circumstances, petitioner's overall compliance history does not weigh in favor of compromise.  Petitioner repeatedly failed to file timely Federal tax returns and to pay taxes due.  She annually omitted from her returns significant rental income from the Cape Cod residence prior to its sale.  The record also suggests that petitioner defaulted on an earlier installment agreement. Against this background and in the absence of other unique or compelling circumstances alleged by petitioner, considerations of policy or fairness do not require that petitioner be relieved of her tax liabilities.

To summarize, the evidence before us does not indicate that in rejecting petitioner's offer in compromise, respondent acted arbitrarily, capriciously, or without sound basis in fact or law.

See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).  Respondent considered petitioner's circumstances in light of the prescribed guidelines for accepting offers.  Respondent then reasonably concluded that the information presented fell short of establishing either the requisite economic hardship or other exceptional factors demonstrating that compromise of the liability will not undermine voluntary compliance with the tax laws.  The Court will sustain respondent's collection action.

　　　To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.
